FRED H. GORDER, EXECUTOR, ET AL., APPELLEES, V. PLATTSMOUTH CANNING COMPANY, APPELLEE, AND WILLIAM WEBER ET AL., APPELLANTS.

FILED MARCH 29, 1893. No. 4709.

1. **Corporations:** EXECUTION OF DEED OR MORTGAGE: PRESUMPTION OF AUTHORITY. Where a deed or mortgage purporting to have been executed by a corporation is signed and acknowledged in its behalf by the president and secretary thereof, with the corporate seal attached, the presumption is that it was executed by authority of such corporation and the burden of proof is upon one who denies such authority.

2. ———: CONTRACTS ULTRA VIRES: BURDEN OF PROOF. Contracts of a corporation which are not contrary to the express provisions of its charter are presumed to be within its powers, and the burden is upon one denying their validity to prove the facts which render them *ultra vires*.

3. ———: ———: EVIDENCE *held* to sustain the findings of the district court that the indebtedness secured by the mortgage of the defendant corporation was not in excess of the limitation named in its charter.

4. ———: ———: DIRECTORS AND STOCKHOLDERS: FIDUCIARY RELATIONSHIP. The relation of the directors to stockholders of

a corporation is of a fiduciary character and their contracts and dealings with respect to the corporate property will be carefully scrutinized by the courts. Such contracts are not, however, necessarily void. Where it is clear that the transaction is in good faith on the part of the director and beneficial to the corporation which has with the sanction of the stockholders received and appropriated the consideration without offering to make restitution, it may be upheld when assailed even in a court of equity.

5. ——: ——: ——. EVIDENCE examined and *held* to sustain the finding that the indebtedness of the defendant company to the plaintiffs, directors thereof, was contracted with the knowledge and approval of the intervenors, who were stockholders, and that the execution of certain mortgages to secure such indebtedness was sanctioned by such stockholders.

6. ——: NOTICE OF INDEBTEDNESS: LIABILITY OF STOCKHOLD-ERS. In order to recover from stockholders of a corporation on account of a failure to give the statutory notice of its indebtedness, it must affirmatively appear that the credit was given to such corporation while it was in default of the required notice.

APPEAL from the district court of Cass county. Heard below before FIELD, J.

G. W. *Covell* and *Beeson & Root,* for appellants.

A. N. *Sullivan, contra.*

POST, J.

This is an appeal from a decree of the district court of Cass county. In the petition it is alleged that on the 25th day of November, 1887, the plaintiffs executed their joint note for $5,000 to the First National Bank of Plattsmouth, due in six months from date, and that on the 30th day of December, 1887, they executed a second note to said bank, due six months after date, for $4,500; that said notes were both executed for the accommodation of the defendant, the Plattsmouth Canning Company; that to secure the payment of said notes, and to indemnify plaintiffs as sureties thereon, the defendant company on the day last named executed and delivered to them a mortgage upon certain

real estate in the city of Plattsmouth; also a chattel mortgage upon all of the machinery, fixtures, and other personal property of said company. The petition, after an allegation of a breach of the conditions of the mortgage, contains a prayer for an accounting and foreclosure and for general equitable relief.

The canning company filed an answer, admitting all the allegations of the petition contained except as to the amount of indebtedness claimed therein. Shortly thereafter, and before trial, the court permitted the appellants to intervene and file answer, in which they allege, in substance, that they are stockholders in said company, and that it commenced business in 1885 with a capital stock of $18,000; that by the articles of incorporation it is provided that at no time shall the indebtedness of said company exceed one-half of the capital stock thereof; that the plaintiffs were elected directors of said company at its organization, and, with the exception of the plaintiff Lewis, have continued to act in such capacity; that the plaintiff Guthman has been the president of said company ever since its organization, and the plaintiffs Lewis and Gorder have been the only secretaries thereof; that at all times since the first year of the existence of said corporation its indebtedness has been largely in excess of the limit fixed by its articles of incorporation, and that said excess of indebtedness was incurred by the plaintiffs as directors of said company without any authority from its stockholders; that the notes and mortgages described in the petition were executed without any authority whatever, and that F. R. Guthman as president and E. B. Lewis as secretary, who pretended to execute said mortgages, are plaintiffs in this action; that the property described in said mortgages comprises the entire assets of said company, and that there are in addition to the amounts claimed on said notes and mortgages at least $4,000 of debts owing by said company, for which the stockholders are individually liable because

of the neglect of plaintiffs to comply with the laws in
regard to corporations; that the debts owing by said cor-
poration were all contracted while the officers thereof were
in default in complying with the statutory provisions
governing corporations, requiring them to publish annu-
ally a statement of all the existing debts of said corpora-
tion. The intervenors pray that plaintiffs' petition be
dismissed with costs, that said mortgages and the record
thereof be canceled, and for equitable relief.

During the progress of the trial, by permission of court,
intervenors filed an amendment to their answer, setting up
that they and each one of them are creditors of the defend-
ant canning company, having advanced various sums from
$25 to $300 each by way of loans to said defendant at its
request, which sums are still due and unpaid. In addition
to the relief asked in their answer they pray for a receiver
of said company to take charge of its property and convert
the same into cash, to be applied first in payment of the
general indebtedness thereof exclusive of the amounts ow-
ing to its stockholders, and that the funds remaining be ap-
plied *pro rata* between the different stockholders.

On the hearing before the district court there was a gen-
eral finding for the plaintiffs and a decree of foreclosure in
accordance with the prayer of the petition, from which the
intervenors have appealed to this court. The first propo-
sition argued is that the evidence fails to show authority
from the board of directors for the execution of the mort-
gages or either of them. Both mortgages purport to have
been executed by the Plattsmouth Canning Company and
acknowledged in behalf of said company by F. R. Guth-
man, president, and E. B. Lewis, secretary, and attested by
the seal thereof. The genuineness of the signatures to the
mortgage, as well as the official character of the signers, is
specifically admitted, but we understand counsel for inter-
venors to contend that authority for the execution of the
mortgages must affirmatively appear from the record of the
board of directors.

To that proposition we cannot give our assent. The signatures of the officers with the corporate seal attached is *prima facie* evidence that the mortgages were executed by authority of the company, and the burden of proving want of authority is upon the intervenors. (Ang. & Ames, Corp., sec. 217; Boone, Corp., sec. 50; *Blackshire v. Iowa Homestead Co.*, 39 Ia., 624; *Whitney v. Union Trust Co.*, 65 N. Y., 577; *Davis v. Jenney*, 1 Met. [Mass.], 221; *Williamsburg City Fire Ins. Co. v. Frothingham*, 122 Mass., 391; *Murphy v. Welch*, 128 Id., 489; *Hamilton v. Mc-Laughlin*, 12 N. E. Rep. [Mass.], 424; *Morris v. Keil*, 20 Minn., 531; *Musser v. Johnson*, 42 Mo., 74.)

2. It is claimed that the mortgages are void for the reason that they are in excess of the amount of indebtedness authorized by the articles of incorporation of the company. It is provided by article 4 that "the highest amount of indebtedness to which the corporation shall at any time subject itself shall not exceed one-half of the amount of its capital stock issued." It appears from the bill of exceptions that $5,000 of the indebtedness represented by the mortgages was incurred on the 18th day of August, 1885, on which day the plaintiffs executed their joint note to the First National Bank of Plattsmouth for the accommodation of the company, the note of like amount, described in the mortgages, being a renewal thereof. At that time the amount of stock issued does not appear, although it is alleged in the answer that the capital stock in February, 1885, was $18,000, nor is the amount of the company's indebtedness apparent from the record. It appears also, from the minutes of a meeting of stockholders held January 4, 1886, that 148½ shares of stock were represented thereat, from which it is evident that the stock at that date amounted to at least $14,850. The date when the additional indebtedness of $4,500 was incurred does not appear, but the note for said amount is in renewal of an accommodation note executed by plaintiffs for the benefit of the company long

prior to the execution of the mortgages. The presumption is in favor of the validity of the contract in question. It is not upon its face necessarily outside the scope of the corporate power of the defendant company. The recognized rule is that the contracts of a corporation not contrary to the express provisions of its charter are presumed to be within its powers, and the burden is upon one seeking to invalidate them to prove the facts which render them *ultra vires*. ( *Ohio & M. R. Co. v. McCarthy,* 96 U.S., 267; *Curtis v. Gokey,* 68 N. Y., 300; *Elkins v. Camden & Atlantic R. Co.,* 36 N. J. Eq., 241; Wood, Law of Railroads, 526; Boone, Corp., 43.) This case is clearly within the rule recognized in the authorities cited. The district court evidently found against the intervenors on the question of the validity of the mortgages and with that finding we are entirely satisfied.

3. The next question, and the one to which most prominence is given in the brief of intervenors, is whether the mortgages are void by reason of the fact that the plaintiffs were directors of the company at the time the indebtedness was incurred and when the mortgages were executed. It should be observed in this connection that two of the plaintiffs, to-wit, Guthman and Lewis, were acting as president and secretary respectively, and as such executed the mortgages in behalf of the company. There is no claim made of fraud against the plaintiffs. In fact their conduct throughout proves that they were actuated by no motives but to promote the success of the company and the interest of the stockholders. It is not disputed that the business of the company was conducted from the beginning with money raised by these and other directors upon their personal obligations. And, from the facts disclosed by the record, the inference is irresistible that said money was advanced, and that the mortgages to the plaintiffs were executed with the knowledge and approval of the stockholders, including the intervenors. For instance, we find that

since the first day of August, 1885, thirty-five different
notes were executed by these plaintiffs (with the exception
of E. B. Lewis, whose name appears on but sixteen there-
of), amounting in the aggregate to more than $150,000.
Many of the notes mentioned, it seems, were renewals
of others as they matured, and although the amount thus
advanced upon the credit of the directors is not clear from
the proofs, there is no doubt that said notes were all ex-
ecuted for the accommodation of the company, and the
proceeds thereof used in the transaction of its business.
At the regular meeting of stockholders in January, 1886,
two of the intervenors, Wm. Nevill and C. M. Weed,
were elected directors, and during the year following each
signed a number of the notes above described, with other
directors, and must have been aware of the resources of
the company, and the advances which were being made to
it on the credit of the directors. It is hardly an exaggera-
tion to say that the lending to the company of their personal
credit appears to have been one of the recognized duties of
the managing directors.

On the 25th day of June, 1886, F. R. Guthman, E. B.
Lewis, J. V. Weckbach, Fred Gorder, F. E. White, A.
W. McLaughlin, C. M. Weed, and Henry Boeck being lia-
ble for debts of the company to the amount of $16,000, a
mortgage was executed by it in favor of said parties on the
following property, to-wit: "The whole plant of said
Plattsmouth Canning Company, buildings, machinery, ma-
terial on hand and manufactured and in process of manu-
facture, engines, boilers, and manufactured goods in store,
and product of the works as rapidly as the same is manu-
factured." In said mortgage, among other recitals, is the
following: "The said canning company being in need of
money to enlarge and extend its works and business, and
having borrowed the same upon notes with indorsements
of the mortgagees, this mortgage is given to said mort-
gagees as indorsers and sureties for said canning company

to save them harmless upon such indorsements." Said mortgage was acknowledged in behalf of the company by F. R. Guthman, president, and C. B. Lewis as secretary, and filed for record in Cass county on the 28th day of June, 1886.

We also find the following record of a meeting of the directors under date of December 28, 1887 : "Board met at 11 o'clock A. M., and was called to order by the president. Present, Guthman, Davis, Gorder, Weckbach Donnelly, and Lewis. Minutes read and affirmed.  *  *  * Fred Gorder was appointed as a committee to attend to having a new mortgage made out to take the place of one now on file, securing F. R. Guthman, Fred Gorder, J. V. Weckbach, G. A. Davis, and E. B. Lewis in the sum of $9,500 on the entire plant and stock of the canning company, and they have personally secured to the First National Bank for a loan to the canning company for that amount. E. B. Lewis, secretary."

The mortgages set out in the petition were executed pursuant to the authority shown by the foregoing record, and the prior mortgage therein mentioned is the one bearing date of June 25, 1886, to which reference has been made. The only one of the intervenors who positively denies knowledge of the mortgages is Weber, and we think in view of the undisputed facts in the case he should not now be heard to question this legality. He, in common with other stockholders, must have known from the amount of the company's business that it was obtaining large sums of money from some source and beyond its power to secure except by mortgaging the canning factory and fixtures. It is also in evidence, and not seriously questioned, that at each annual meeting of the stockholders a statement of the assets and liabilities of the company was exhibited and the books examined. When we take into consideration also the fact the validity of the mortgages was first called in question by the intevenors' answer in April, 1890, it is evi-

dent that the claim of the latter that the execution thereof was without their consent is not entitled to serious consideration. There is no doubt that the relation of directors to the corporation of which they are officers is of a fiduciary character, and their contracts and dealings with respect to the corporate property will be carefully scrutinized by the courts. There are to be found cases in which it is asserted that such contracts are absolutely void and not enforcible, either in courts of law or equity, but the decided weight of authority, as well as the more satisfactory reasoning, sustains the view that they are voidable only.

It is frequently said in the reports and text-books that contracts between corporations and their directors will be set aside by courts of equity at the election of the stockholders, but such statement is not strictly accurate. Not every purchase of corporate property by the directors of the corporation will be adjudged void in an action by the stockholders even by courts of equity. On the contrary, the relation of directors to the stockholders of a corporation is not essentially different from that ordinarily existing between trustee and *cestui que trust*. Courts of equity will set aside such contracts on the ground of fraud, and generally upon slight showing of fraud or bad faith by the trustee. But where it is clear that the transaction was in good faith, and the *cestui que trust* being under no disability has received and retains the consideration paid for the trust property by the trustee, it will be upheld when assailed either at law or in equity.

In the case of *Twin-Lick Oil Co. v. Marbury*, 91 U. S., 589, which is directly in point, Mr. Justice Miller uses the following pertinent language: "While it is true that the defendant, as a director of the corporation, was bound by all those rules of conscientious fairness which courts of equity have imposed as the guides for dealing in such cases, it cannot be maintained that any rule forbids one director among several from loaning money to the corpora-

tion when the money is needed, and the transaction is open and otherwise free from blame. 'No adjudged case has gone so far as this.  Such a doctrine, while it would afford little protection to the corporation against actual fraud or oppression, would deprive it of the aid of those most interested in giving aid judiciously and best qualified to judge of the necessity of that aid, and of the extent to which it may safely be given."

The view expressed in the foregoing quotation is abundantly supported by authority.  (See *Buell v. Buckingham*, 16 Ia., 284; *Hallam v. Indianola Hotel Co.*, 56 Id., 178; *Garret v. Burlington Plow Co.*, 70 Id., 697; *Smith v. Lansing*, 22 N. Y., 520; *Duncomb v. New York, H. & N. R. Co.*, 84 Id., 190; *Welch v. Importers & Traders Nat. Bank*, 122 Id., 177; *Omaha Hotel Co. v. Wade*, 97 U. S., 13; *Stratton v. Allen*, 16 N. J. Eq., 229; *Sims v. Street R. Co.*, 37 O. St., 556; *Busby v. Finn*, 1 Id., 409; *Stark v. Coffin*, 105 Mass., 328; *Holt v. Bennett*, 146 Id., 437; *Saltmarsh v. Spaulding*, 147 Id., 224; Beach, Private Corp., 242, 245.)

There is nothing in the claim of the intervenors to entitle them to especial consideration at the hands of a court of equity.  They, by their conduct, to say the least, sanctioned the use by the canning company for two years and a half of large sums of money procured on the credit of plaintiffs and the execution of the mortgages mentioned as security.  Had the business continued prosperous as it was during the first year, when a dividend was declared and paid in stock of the company, it is not probable that the action of the directors would ever have been called in question.  Having taken their chances of profits from the investment of money raised by pledging the company's property, they should not now, after misfortune has overtaken their venture, be permitted to repudiate the acts deliberately ratified if not induced by them.

4. There is a further contention by the intervenors, viz., that the plaintiffs, as managing directors, failed and neg-

lected to give notice as required by law of the indebtedness of the company, by reason of which they have become liable for the amount of its debts upwards of $4,000. We think the answer fatally defective for the reason that no facts are alleged therein to show that any part of said indebtedness was contracted during the time plaintiffs were in default of the statutory notice. (*Smith v. Steele*, 8 Neb., 115.) Nor is there any evidence in the record to support a finding that intervenors as stockholders have become liable for any indebtedness of the company by reason of the failure to give such notice. We are satisfied that the decree of the district court is right and should be

AFFIRMED.

THE other judges concur.