W. C. TILLSON ET AL. V. GEORGE H. DOWNING.

FILED JUNE 19, 1895. No. 6083.

1. **Corporations:** INSOLVENCY: PREFERENCE IN FAVOR OF DIRECTORS. Directors of an insolvent corporation cannot take advantage of their position to obtain a preference of debts owing by the corporation to themselves. *Ingwersen v. Edgecombe*, 42 Neb., 740, followed.

2. ———: ———: ———. Neither can they prefer debts to third persons for which they are obligated as sureties.

3. ———. These rules do not apply to a solvent corporation. On the contrary, such corporations have the same dominion over their property as individuals.

ERROR from the district court of Buffalo county. Tried below before HOLCOMB, J.

*Marston & Nevius*, for plaintiffs in error.

*R. A. Moore, contra.*

IRVINE, C.

This action was replevin by Tillson and Osborn against the sheriff of Buffalo county, the property in controversy

being certain machinery and other chattels appertaining
to a brick yard.    The plaintiffs claimed title through a sale
made under foreclosure of a chattel mortgage.    The sheriff
claimed under a writ of attachment by virtue of which he
had seized the property in question as the property of the
mortgagor.    The attaching creditor was substituted for the
sheriff as defendant in the action.    The controversy turned
upon the validity of the mortgage.    There was a verdict
and judgment for the defendant.    The plaintiffs prosecute
error.

The facts which the evidence tends to show are as fol-
lows: The Kearney Brick Company was in September,
1890, the owner of the property.    It was then indebted
to the Kearney National Bank in the sum of $15,000,
represented by notes, upon which M. E. Hunter, G. W.
Frank, Jr., and S. Y. Osborn, the last named being one of
the plaintiffs, were sureties.    Frank was vice president,
Osborn, secretary and treasurer, and Hunter, general man-
ager of the brick company.    The bank insisted upon fur-
ther security for its claim; whereupon the directors of the
brick company authorized notes for $15,000 to be made to
the order of Hunter, Osborn, and Frank, to be secured by
a mortgage on all the effects of the company, except brick
on hand.    These notes and this mortgage were executed,
and the notes were indorsed to the bank by the payees and
the mortgage assigned to the bank.    The persons who con-
ducted the transaction testify that the object of these proceed-
ings was to secure the bank's debt, and that it was given the
form it took in order to obtain the indorsement of Hunter,
Frank, and Osborn.    In January, 1891, the bank pro-
ceeded to foreclose the mortgage, and in February the
property was sold to Osborn and Tillson, the latter being
cashier of the bank.    At a later period, not shown very
distinctly by the evidence, but presumably after the attach-
ment had been levied, and after the plaintiffs had regained
possession of the property by the writ of replevin in this

case, the property was sold to the Electric Brick Company, a new corporation, whose stock was, for the most part, held by Frank and other stockholders of the late company, and organized apparently with a view to making the purchase. Tillson and Osborn paid at the foreclosure sale $6,000 for the property, which was applied on the brick company's notes; they sold the property to the new company for $17,000, Frank and another borrowing the money from the bank to make the purchase. Out of this money Tillson and Osborn repaid themselves the amount of their investment with interest, and with the remainder discharged the remaining indebtedness of the late company to the bank. No question of the rights of a purchaser without notice at the foreclosure sale can well enter into this case, because Tillson, as cashier of the bank, and Osborn, as an officer and director of the brick company, had notice of the transaction, and because it was evident from the way in which the property was handled that in purchasing, holding, and disposing thereof they were in reality acting on behalf of the bank and not in their own interest.

Among the instructions was the following, given at the request of the defendant: "You are instructed that a director of a corporation, or a number of directors, cannot convey the property of a corporation to themselves for the purpose of securing them for indorsing notes for the corporation to the exclusion of other creditors." The giving of this instruction is assigned as error. Standing alone, the instruction would be open to the objection that it would lead the jury to believe that the fact that the mortgage was made to Hunter, Frank, and Osborn, instead of to the bank directly, might be of controlling force. But by other instructions the jury was told, and, we think, correctly, that the mortgage might still be valid if made to secure the bank, notwithstanding it took the form of a mortgage to the indorsers, by them assigned to the bank. The principal question arising in regard to this instruction is, how-

ever, one of much more importance, and calls for a consideration of nearly the whole case on its merits. Is it true that directors may not convey the corporate property to themselves, to the exclusion of other creditors, for the purpose of indemnifying themselves as sureties for the corporate debts? This court has held that contracts between a corporation and its directors, while they will be carefully scrutinized, are not necessarily void. (*Gorder v. Plattsmouth Canning Co.*, 36 Neb., 548.) In that case the corporation mortgaged its property to certain of its directors to indemnify the latter as accommodation makers of notes for the corporation. The transaction was upheld, its good faith being established. On the other hand, it has been held that the directors of an insolvent corporation cannot take advantage of their position to secure a preference for themselves, and a mortgage given to directors under such circumstances was held void. (*Ingwersen v. Edgecombe*, 42 Neb., 740.) We think both these cases are in line with the great weight of modern authorities. If, then, the brick company were insolvent and the mortgage had been made to secure a debt then owing by the brick company to Hunter, Frank, and Osborn, it would be void. Is there a distinction between a mortgage given to secure a debt to the director and a mortgage given to secure a debt to a third person for which the director is surety? In *Bosworth v. Jacksonville Nat. Bank*, 64 Fed. Rep., 615, a very similar state of affairs existed. Hook, the president of a railroad company, having indorsed its note to a bank, made its drafts on another company owing it money for the purpose of securing this note. Soon after the railroad company went into the hands of a receiver. The drawee of the drafts paid the money to the receiver, and the bank filed a petition asking that the receiver be required to pay the amount of the drafts over to the bank. The court held that this was an illegal preference. It will be observed that here the relation of the president to the debt due to the bank was that

of surety, and the case is, therefore, on this feature, precisely in point. The court held "that this difference in Mr. Hook's relation to the railroad company, as compared to that of a creditor proper, would make no difference in the application of the rule in regard to giving preference." *Lippincott v. Shaw Carriage Co.*, 25 Fed. Rep., 577, is to the same effect, as is also *Howe v. Sanford Fork & Tool Co.*, 44 Fed. Rep., 231. (See, also, *Adams v. Kehlor Milling Co.*, 35 Fed. Rep., 433; *Gottlieb v. Miller*, 39 N. E. Rep. [Ill.], 992; *Lowry Banking Co. v. Empire Lumber Co.*, 17 S. E. Rep. [Ga.], 968.) Most of the foregoing are quite recent cases, and as they cite prior authorities, we will not repeat the citations. To the contrary is *Worthen v. Griffith*, 28 S. W. Rep., 286, but that is an Arkansas case governed, evidently, to a large extent, by former Arkansas decisions construing the powers of corporations in the matter of preferences more liberally than they have been construed in most other states; and it is based entirely upon reasoning directly contrary to that upon which *Ingwersen v. Edgecombe* is based. We hold that an insolvent corporation may not convey its property to a creditor for whose debt directors of the corporation are sureties, and that the rule in *Ingwersen v. Edgecombe* forbids not only preferences by directors of their own debts, but also of all debts in which they are interested, and which they would reap a personal advantage by preferring. The instruction, however, is vicious in applying the rule to all corporations, without regard to the question of insolvency. The solvency or insolvency of the brick company was by the instruction entirely withdrawn from the consideration of the jury. *Gorder v. Plattsmouth Canning Co.* and *Ingwersen v. Edgecombe* mark the distinction in such cases. In *Sutton Mfg. Co. v. Hutchison*, 63 Fed. Rep., 496, the opinion is by Mr. Justice Harlan, and is too long for quotation here, but its effect is that so long as a corporation is in active exercise of its functions

it may, having due regard to the objects of its creation, exercise as full dominion over its property as an individual, but when it becomes insolvent and has no purpose of continuing business its powers are more limited. In the former case it may accept assistance from its directors, and by mortgage, or otherwise, protect them against liability, but in the latter case it will not be permitted to mortgage its property to secure a liability previously incurred to its directors.

The questions we have discussed cover the salient points of the case, and the considerations referred to will be sufficient, we think, to govern further proceedings. Consequently, no further assignments of error will be considered.

•                    REVERSED AND REMANDED.