HENRY WORTENDYKE v. GEORGE E. SALLADIN.

FILED SEPTEMBER 17, 1895. No. 5910.

Fraudulent Conveyances: INSOLVENT CORPORATIONS: PREF-
ERENCE IN FAVOR OF STOCKHOLDER. Where the holder of
stock of an insolvent corporation, just before its final suspen-
sion of business, obtained assignments to himself of such an
amount of the corporation's bills receivable as to fully secure
claims owing to such stockholder and a partnership firm of which
he was a member, leaving almost no assets for the payment of
the other creditors of the corporation, the intent with which
such preference was made and received was a question of fact
for the jury, and its verdict upon proof of the above facts, that
such preference was fraudulent as against creditors of the cor-
poration, will not be disturbed as unwarranted in fact or in law.

ERROR from the district court of Seward county. Tried
below before BATES, J.

*G. M. Lambertson,* for plaintiff in error:

A failing bank has the right both to borrow money and to give security for the payment thereof, and may also se-cure creditors for antecedent debts if done in good faith. (*Hershiser v. Higman,* 31 Neb., 534; *Davis v. Scott,* 22 Neb., 154; *Bierbower v. Polk,* 17 Neb., 278; *Ward v. Par-lin,* 30 Neb., 376; *Brown v. Williams,* 34 Neb., 376; *Kava-naugh v. Oberfelder,* 37 Neb., 647.)

A stockholder who has a deposit in the bank, subject to check, may, in consideration of not withdrawing the de-posit, take security for the payment thereof. (*Twin-Lick Oil Co. v. Marbury,* 91 U. S., 589; *Omaha Hotel Co. v. Wade,* 97 U. S., 13; *Santa Cruz R. Co. v. Spreckles,* 65 Cal., 193; *Hallam v. Indianola Hotel Co.,* 56 Ia., 178; *Duncombe v. New York, H. & N. R. Co.,* 88 N. Y., 1; *Borland v. Haven,* 37 Fed. Rep., 406.)

The court in giving the seventh instruction asked by de-fendant that a stockholder could loan money to a bank and take security for payment, and in giving the seventh in-struction asked by plaintiff that such a loan was void if the intention was also to obtain security for other money due him, had a tendency to confuse and mislead the jury. (*McCleneghan v. Omaha & R. V. R. Co.,* 25 Neb., 523; *Wasson v. Palmer,* 13 Neb., 376; *Fitzgerald v. Meyer,* 25 Neb., 77; *School District v. Foster,* 31 Neb., 501.)

*R. S. Norval* and *R. P. Anderson, contra.*

RYAN, C.

The Northwestern Banking Company was, from the year 1884 till January 29, 1889, engaged in the business of banking at Milford, in Seward county. There was no copy of its articles of incorporation filed in the office of the county clerk of said county, though during the entire interval of time above indicated this company did business as, and

claimed to be, a corporation. The decision of this case does not require us to give great weight to this omission and the company will therefore be treated as though incorporated in exact compliance with the statutes of this state. Henry Wortendyke, the plaintiff in error, was an owner of a small amount of the company's capital stock on January 28, 1889. Mr. Emerson, the company's general manager, on that day said to Mr. Wortendyke that there was a run on the bank and that it was short of currency. It was then arranged between these two persons that Mr. Wortendyke should borrow a thousand dollars at Seward for the use of the banking company. For this purpose he proceeded to Seward and borrowed on his own credit the sum of $2,000. One-half of this he left in the bank at the place last named, and with the other half, between 10 and 11 o'clock in the forenoon of January 29, 1889, he returned to Milford. The amount left at Seward seems for the most part, if not altogether, to have been drawn out upon the checks of Mr. Wortendyke in payment of deposits owing by the banking company. It is not disclosed what was done with the cash brought by Mr. Wortendyke to Milford in the forenoon of January 29, aforesaid, but it is very certain that in the afternoon of that day the banking company ceased to do business. A few days thereafter Mr. Salladin became its assignee and in that capacity brought this action, the occasion and nature of which we shall now describe.

At the time that Mr. Wortendyke went to Seward he was associated, as a partner in the insurance business, with Richard Spelts. The style of this firm was Wortendyke & Spelts, and on January 28, 1889, it had a deposit with the banking company to the amount of about $430. Mr. Wortendyke's deposit with the same banking company was to the amount of $212.50. To indemnify Mr. Wortendyke in respect to the money borrowed by him at Seward, and to secure the above deposits, Mr. Emerson transferred

to Mr. Wortendyke notes held by the banking company to the amount of $3,500. When the assignee shortly afterward took possession of the assets of the banking company, it was found that they amounted to but little over $2,000, while its liabilities, as it has since transpired, exceeded $20,000. This action was brought by the assignee to recover from Mr. Wortendyke $2,475, which it was alleged was the amount of the collaterals which Mr. Wortendyke had, upon demand, wrongfully refused to pay to said assignee. The theory upon which this was claimed was that Mr. Wortendyke, a stockholder of the banking company, by means of a fraudulent arrangement with the general manager, had secured possession of a large part of its assets, and, with intent to defraud its depositors and other creditors, had wrongfully converted the aforesaid amount thereof to his own use. In his answer Mr. Wortendyke averred that of the sum he had borrowed at Seward he had turned over to the banking company $1,644, which had been used to pay its depositors; that he had retained $213, which the banking company owed him as depositor, and the sum of $431.15, likewise a deposit, which was due Wortendyke & Spelts, and that he had paid out $186 as attorney's fees and other expenses of collecting the aforesaid notes. There was a reply in denial of each of these allegations of the answer. A trial was had of the above issues to a jury, which returned a verdict in favor of the assignee for the sum of $700, upon which judgment was duly rendered. This was on March 17, 1892. This verdict was for less than the aggregate amount of the deposits of Wortendyke & Spelts and Mr. Wortendyke, with seven per cent thereon computed from January 29, 1889. Upon consideration of the entire evidence we see no reason for reversing the judgment of the district court whereby the verdict was sanctioned.

In respect to the money borrowed for and used by the bank to tide over an emergency the language of Mr. Jus-

tice Miller in *Twin-Lick Oil Co. v. Marbury*, 91 U. S., 589, was perhaps applicable. This language, quoted with approval in *Gorder v. Plattsmouth Canning Co.*, 36 Neb., 548, was as follows: " While it is true that the defendant, as a director of the corporation, was bound by all those rules of conscientious fairness which courts of equity have imposed as the guides for dealing in such cases, it cannot be maintained that any rule forbids one director among several from loaning money to the corporation when the money is needed, and the transaction is open and otherwise free from blame. No adjudged case has gone so far as this. Such a doctrine, while it would afford little protection to the corporation against actual fraud or oppression, would deprive it of the aid of those most interested in giving aid judiciously and best qualified to judge of the necessity of that aid, and of the extent to which it may safely be given." These considerations, however, have no applicability to such deposits as were due Wortendyke & Spelts and Mr. Wortendyke when the latter, just before the banking company suspended business, obtained collateral security for the full amount in which, as a creditor, he was in any way interested. Whether or not the preference was fraudulent was a question of fact for the jury, and with its verdict in the light of the evidence we find no cause for complaint by the plaintiff in error. The seventh instruction given by the court was a fair statement of the rule which should govern the jury in considering the effect of taking security for the deposits hereinbefore referred to, and the criticism of this instruction cannot receive our sanction.

Instructions numbered 3, 6, and 7, asked by the plaintiff and given, are in gross assailed by one assignment, which questions the correctness of the general rule hereinbefore held applicable to the security taken for the deposit due from the banking company to Mr. Wortendyke and to Wortendyke & Spelts. An extended review of these instructions is therefore unnecessary.

The refusal of the court to give instructions requested by the defendant numbered 1, 2, 3, 4, 5 is called in question by a single assignment. The rules of law applicable to this case, and embodied in the instructions which were numbered 4 and 5, were by the court upon its own motion stated to the jury as favorably as the defendant was entitled to have them stated, hence this assignment must be disregarded. There is found no error in the record and the judgment of the district court is

AFFIRMED.

NORVAL, C. J., not sitting.