ALBERT U. WYMAN, RECEIVER OF THE NEBRASKA FIRE
    INSURANCE COMPANY, APPELLANT, V. NATIONAL
    BANK OF COMMERCE, APPELLEE.

FILED MAY 18, 1897.    No. 7053.

**Banks and Banking:** TRUST FUNDS DEPOSITED BY CORPORATION: LIA-
    BILITY OF BANK.  Where certain officers and stockholders of a cor-
    poration borrowed money intended by them·to be deposited in a
    bank and therein held as a trust fund for the creditors of the said
    corporation, but such intention as well as the insolvent condition
    of the corporation were unknown to the bank wherein the deposit
    was made, the payment in good faith of the fund upon the check
    of an officer of the corporation did not render the bank liable as a
    trustee to other creditors of the corporation, or to its receiver on
    their behalf, merely because the proceeds of said check, with the
    consent of the bank, were used to take up the note on the faith of
    which the loan had originally been made by the bank.

APPEAL· from the district court of Douglas county.
Heard below before WALTON, J.   *Affirmed.*

*A. C. Wakeley, E. Wakeley,* and *Hall & McCulloch,* for
appellant.

*E. J. Cornish, contra.*

RYAN, C.

This action was brought by· Albert U. Wyman, as re-
ceiver of the Nebraska Fire Insurance Company, in the
district court of Douglas county.   There was a judgment
against George F. Wright and Samuel R. Johnston, by·
whom an appeal was taken to this court.   As there has
been a settlement of this branch of the controversy these
parties will be referred to merely for the purposes of
the discussion of the right of the receiver to a reversal
of the judgment of the district court in favor of the Na-
tional Bank of Commerce.

The averments of the petition were, in substance, that,
on the 14th day of May, 1891, William G. Madden, a

holder of certain shares of the stock of the Nebraska Fire Insurance Company, applied for the appointment of a receiver of the aforesaid insurance company; that the attorney general intervened in said proceeding, and that on the application of both these parties there was, about June 6, 1891, a receiver appointed as prayed, on account of the insolvency of the insurance company. It was further alleged that about the 11th day of April, 1887, the insurance company had deposited with the National Bank of Commerce, then known as the Bank of Commerce, the sum of $35,000, to be held for the use of said insurance company, and especially as a guaranty to the holders of policies of insurance which had been or might thereafter be issued by the company, and for the purpose of meeting any liabilities then existing or which might thereafter accrue against said company. The said $35,000, it was averred, was, in the statement filed with the state auditor of public accounts respectively in 1887, 1888, 1889, and 1890, represented as a fund available for the above purposes, all of which facts were known to the officers of the defendant bank. It was further alleged that this fund was held for the use and benefit of, and in trust for, the said insurance company, and especially for its policy holders and other creditors, from the time of its being deposited with the bank until it was wrongfully appropriated as alleged. The allegations with reference to the wrongful appropriation of this fund were made at great length and, condensed as much as may be, they were that about April 11, 1887, the co-defendants of the bank borrowed of it the said sum of $35,000, for which they executed their promissory note to the said bank; that on April 13, 1891, said note, or a renewal thereof, was held by the bank as security for the payment of said sum; that at the time the said money was borrowed, and at the time of the occurrence of other matters complained of, certain of the makers of the aforesaid note sustained the following relations to the insurance company, to-wit: Samuel R.

Johnston was a director and was its president; George F. Wright was a director and a member of its executive committee; J. T. Hart was a director, its general manager, and a member of its executive committee; J. W. Morse was a director, and was its vice-president and treasurer. Of the other makers of the note it was alleged that Henry Laub, Eli Clayton, and George W. Kingsworth were holders of stock of said insurance company. In general terms, it is sufficient for all practical purposes to state that the petition in this connection charged that on the 13th day of April, 1891, the insurance company was, and for some time prior thereto had been, hopelessly insolvent, and that its capital at the above named date had become so impaired that the company was unable longer to transact a safe insurance business and comply with statutory requirements designed to guard against irresponsible insurance, wherefore the state auditor aforesaid revoked its license. Full knowledge of the existence of these conditions, by the petition, was imputed to the officers and managers of the bank. It was further averred by the receiver that the defendants, Johnston and Wright, with others unknown to the receiver, conspired and colluded with one M. J. Burns, a director and secretary of the insurance company, to appropriate the aforesaid sum of $35,000 to the use and benefit of themselves and the other makers of the aforesaid note, and to that end induced Burns to sign the following instrument:

"OMAHA, NEB., April 13, 1891.

"National Bank of Commerce; pay to the National Bank of Commerce, for note, or order $35,018.05, thirty-five thousand and eighteen and 5-100 dollars.

"THE NEBR. FIRE INSURANCE COMPANY.

"By M. J. BURNS, *Secretary.*"

It was further charged that with the proceeds of this check the note aforesaid was paid. It was also alleged that Burns had no authority to apply the aforesaid fund to the payment of the note held by the bank, and that

the appropriation thereof to the purpose indicated was in violation of the rights of policy holders and other creditors of the insurance company, and that by reason of the premises, the National Bank of Commerce and the other defendants became and continued to be liable to the receiver for the said sum of $35,000, for which amount, with interest from April 13, 1891, there was a prayer for judgment. There were answers for the several defendants, to which replies were duly filed.

The issues thus presented need not be described, for there were special findings in respect to them by which their nature is sufficiently indicated. In effect, these findings were that the makers above referred to borrowed the sum sought to be recovered in this action; that upon borrowing said sum it was by the parties who had made the note deposited in the bank to the credit of the treasurer of the insurance company for the uses, purposes, and upon the trust described in the petition, and so remained on deposit until April 13, 1891, except that, at some time, a small part of it was used by the insurance company, but not sufficient to reduce the deposit to less than $31,000 at any one time. It was specially found that the sum of $35,000 was described in the annual statements to the state auditor of public accounts; that on, and for a considerable time before April 13, 1891, the insurance company had been insolvent and unable to pay its debts,—a fact well known to the makers of the aforesaid note, but this condition was unknown to the officers, managers, agents, and directors of the Bank of Commerce. Other special findings were made, but as they refer only to the acts of the parties held liable, and constituted the ground of such liability, they need not be described, in view of the fact that this branch of the case is not presented for review. It is thus seen that the issues now presented are reduced to a very limited scope of inquiry. The $35,000 was borrowed by certain officers and stockholders of the insurance company and by them this fund was deposited with the bank. It was intended

by the parties obtaining and depositing this money that it should be used as a trust fund for the benefit of the creditors of the insurance company. The court found specially, and upon sufficient evidence to sustain such finding, that the officers and agents of the bank had no knowledge of this trust purpose. As shown by the evidence, without contradiction, the credit was at first in favor of the treasurer of the insurance company, afterwards the sum was placed to the credit of the company itself. The loan was solely on the faith of the credit of the individuals who signed the note, and to this amount the insurance company was therefore indebted to those signers,—a fact well known to the officers of the bank. As has been held by this court, these creditors of the insurance company, though its officers, were entitled to receive payment of the indebtedness due them, provided they made no use of their official relations to secure an advantage in that respect. (*Tillson v. Downing*, 45 Neb., 549; *Ingwersen v. Edgecombe*, 42 Neb., 740; *Gorder v. Plattsmouth Canning Co.*, 36 Neb., 548.) As the bank had no knowledge of the insolvent condition of the insurance company, and was not aware that there was any trust with relation to the deposit in question, there existed no reason why it should have refused to honor the check drawn upon it by a proper officer of the insurance company for the payment of this particular indebtedness of the insurance company. The judgment whereby the bank was held not to be liable was right and accordingly it is

AFFIRMED.

IRVINE, C., not sitting.