52   833
s53   670

A. U. WYMAN, RECEIVER, APPELLEE, v. L. B. WILLIAMS
ET AL., APPELLANTS.

FILED DECEMBER 9, 1897.   No. 7634.

1. Corporations: INSOLVENCY: AUTHORITY OF RECEIVER.   The authority of the receiver of an insolvent corporation to collect assessments made by its board of directors before his appointment as such receiver is sufficiently established by showing that such receiver, under his order of appointment, was required to collect all sums due such insolvent corporation from whomsoever such indebtedness might be owing.

2. ————: ASSESSMENTS: LIABILITY OF STOCKHOLDERS.   The members of a board of directors of an insolvent corporation who took part in a meeting of said board at which, by a unanimous vote, an assessment upon the unpaid subscriptions of such directors was declared necessary to discharge the debts of the corporation and accordingly there were made such assessments, are in no situation to question their liability for the amount of such assessments because of the fact that no judgment had been rendered against the corporation, and its want of assets established by the return, *nulla bona,* of an execution against it.

3. ————: ————: PAYMENT: PLEADING: REVIEW.   Where a note was made for the amount of an unpaid subscription to the capital stock of a corporation, the payment of such note, to be available, must be pleaded and proved by the party relying on such payment as a discharge of his liability, and a finding of the trial court adverse to such alleged discharge will not be disturbed on appeal when all the evidence on that issue is not preserved by bill of exceptions.

APPEAL from the district court of Douglas county. Heard below before WALTON, J.   *Affirmed.*

*Hall & McCulloch, Warren Switzler,* and *J. W. West,* for appellants.

*E. Wakeley* and *A. C. Wakeley,* contra.

57

RYAN, C.

This was an action brought in the district court of Douglas county by Albert U. Wyman, as receiver of the Nebraska Fire Insurance Company, an insolvent corporation, for the collection from several of its individual stockholders of an amount equal to the unpaid subscription of each stockholder named as a defendant. The final decree, in so far as it establishes the liability of the appellants, was in this language: "And it is further considered, adjudged, and decreed that the plaintiff, as receiver of the said Nebraska Fire Insurance Company, have and recover of and from the said defendant Lorenzo B. Williams the sum of $6,243.75, with interest from the 13th day of April, A. D. 1891; and of and from the defendant George F. Wright the sum of $7,617.37, with interest from the 13th day of April, A. D. 1891; and of and from the defendant Samuel R. Johnson the sum of $10,156.50, with interest thereon from the 13th day of April, A. D. 1891; and of and from the defendant Henry W. Yates the sum of $208.13, with interest thereon from the 13th day of April, A. D. 1891; * * * and that the plaintiff recover of and from the said defendants his costs of this action, taxed at $———," etc. From this judgment Williams, Wright, Johnson, and Yates have appealed. A motion was submitted to affirm the judgment against Williams because of his failure to file a brief as required by the rules of this court. This motion must be sustained, and accordingly the judgment against Williams is affirmed.

It is not necessary to describe at length the various pleadings by which the issues were presented in the district court. For every practical purpose, it is sufficient to say that all the questions urged by the appellants on this appeal were distinctly presented to, and passed upon, by the trial court. These questions summarized, are as follows: (1.) With reference to the right of the receiver to maintain this action two objections were

urged, of which the first was, that the receiver simply represented and stood in place of the corporation for which he assumed to act, and the second objection to the prosecution of this action by the receiver, was, that he was not thereto authorized. (2.) The next question is as to the alleged want of a showing of a necessity for the collection of unpaid subscriptions, even if a creditor was bringing suit. (3.) It is insisted that the amount of debts had not been ascertained nor the assets exhausted before this suit was instituted. (4.) The fourth question presented by appellants involves the right of recovery on any theory, because, as it is insisted, their entire subscriptions for stock had been paid by appellants.

Albert U. Wyman was appointed receiver in an action originally instituted by one of the stockholders against the Nebraska Insurance Company for the purpose, among others, of procuring the appointment of a receiver to wind up the affairs of said corporation, which, as said stockholder alleged, was insolvent. The petition of this stockholder was filed in the district court of Douglas county on May 14, 1891. Nine days afterwards the auditor of public accounts of the state of Nebraska filed his petition of intervention, in which he asked the appointment of a receiver to be clothed with extensive powers such as would enable him to fully wind up the affairs of the said Nebraska Insurance Company. On May 26, 1891, another petition of intervention was filed, this time by the state of Nebraska on the relation of its attorney general. In this petition of intervention there was a prayer for the dissolution of the Nebraska Insurance Company. On April 11, 1892, the final order under and by virtue of which Albert U. Wyman assumes to possess the authority to maintain this suit was made and thereby his powers were defined as follows: "The said receiver shall have power, and it shall be his duty, to commence, institute, and carry on in his own name as such receiver, in this state or elsewhere, all such

actions and proceedings of either a legal or equitable nature as may be necessary to recover possession or obtain control of any and all such property and effects as aforesaid and to recover the value thereof or damages for the conversion of the same or injury thereto or to collect and enforce any and all claims, demands, and choses in action whatever due to said company; and he shall have power, and it shall be his duty, to institute, commence, and carry on in his own name as such receiver any action, suit, or proceeding, in this state or elsewhere, which any general or judgment creditor might commence, prosecute, or carry on, or could, under any circumstances, have commenced, prosecuted, or carried on, or which may be necessary or proper for the purpose of recovering any property, real or personal, or any money or funds or effects whatsoever, held in trust for the creditors or stockholders of the said insurance company, or which ought, legally or equitably, to be applied to, or towards, the payment of any judgment, claim, or demand against said company, or to be distributed among the creditors or stockholders thereof, or any other action, suit, or proceeding which may be necessary and proper for the winding up of all the affairs of the said insurance company or the due distribution of its effects," etc. The language of this order was broad enough to authorize the receiver to maintain an action for the recovery of whatever sum or sums was owing the insurance company. An order to this effect was declared within the powers of the district court in *Farmers Loan & Trust Co. v. Funk,* 49 Neb., 353, where the fund to be collected was the superadded liability of the holder of stock in a banking corporation, and, on principle, there exists no reason for restricting the powers of a district court to that class of cases. The reason of the rule extends to actions against stockholders in ordinary corporations for pecuniary profit for the enforcement of unpaid subscriptions to the capital stock, and we are therefore of the opinion that the order of

the court was within the proper exercise of its juris-
diction and conferred upon the receiver, as such, the
right to institute and maintain this action against the
appellants.

To an intelligent consideration of the three remaining
objections urged by appellants it is necessary to refer
to the proceedings of the board of directors of the Ne-
braska Insurance Company of date April 13, 1891, which,
in the decree, was fixed as the initial date for reckoning
interest.   There were six directors on April 13, 1891,
of whom four were Samuel R. Johnson, George F.
Wright, Lorenzo B. Williams, and M. J. Burns.   Of the
other two, one was a son of Samuel R. Johnson, and the
other was a son of George F. Wright.   Each of these
two directors had one share of stock and, very soon after
April 13, 1891, both ceased to be stockholders and di-
rectors.   The evidence indicates quite clearly that while
but one of these young men was present at the first
meeting, on the day indicated, both were present at the
subsequent meetings of the board hereinafter referred
to.   At the first meeting, as shown by the record signed
by the president and secretary of the company, its man-
ager, Mr. Burns, reported that the sum of $15,552.65,
which had been borrowed by him to pay losses, had be-
come due and that the creditors were demanding imme-
diate payment of the sum, and unless the same was paid
at once suit would be brought against the company, to
the great injury of its credit.   It was thereupon resolved
by the board of directors that the sum above named
should be borrowed, and accordingly the president and
secretary of the company were authorized to execute
the company's notes, bearing ten per cent interest, to
such parties as would loan the required amount, or any
part thereof.   The directors then severally offered to
loan the following amounts, respectively:   Williams,
$3,823.80;   S. R. Johnson, $6,222.93;   George F. Wright,
$4,686.40, and Burns, $819.52.   Notes were executed for
said sums as above indicated should be done.   After

the execution of these notes had been approved and confirmed by the board it was resolved, in view of the large amount required to pay fire losses adjusted and in process of adjustment, that Manager Burns should discharge one-half the employes of the company. In the forenoon of the same day another meeting of the board of directors was had at which Manager Burns reported that the assets of the company, composed of judgments, chattel notes, bills receivable, real estate mortgages, etc., and office furnitures and fixtures, amounts due from agents and others, amounted to $96,153.24. In this report the indebtedness of the company was summarized at $41,703.60, and the manager, in this connection, reported that for the payment of the indebtedness above named an assessment on the unpaid capital of the company of $83\frac{1}{4}$ per cent would be required, which would yield $41,625. On the same day, and apparently at another meeting of the board of directors, Manager Burns presented for its consideration the following written demand:

"MARCH 13, 1891.

*"To the Board of Directors of the Nebraska Fire Insurance Company*—GENTLEMEN: You and the Nebraska Fire Insurance Company are hereby notified that, and we do hereby demand, immediate payment of the moneys loaned by us to the company, as evidenced by its promissory notes we now hold against the same.

"SAMUEL R. JOHNSON.
"L. B. WILLIAMS.
"GEORGE F. WRIGHT.
"M. J. BURNS."

While this communication was under consideration, Director Wright offered the following resolution, which was unanimously adopted: "Resolved, that the report of Secretary and Manager Burns, showing the present indebtedness of the Nebraska Fire Insurance Company for moneys borrowed from time to time to pay adjusted losses by fire and the proper expenses of said company

aggregating at this date the sum of forty-one thousand six hundred and twelve dollars, is found upon due examination thereof to be correct and just, and that the same amount has been borrowed from (and loaned to said company) by L. B. Williams in the sum of $10,-757.42, by Samuel R. Johnson in the sum of $16,442.57, by George F. Wright in the sum of $12,265.05, by M. J. Burns in the sum of $2,147.02, and that the loan thereof by said parties to this company is hereby approved and ratified, and that the same is now due and owing said parties from said company, with ten per cent interest thereon from this date, and said report, as made and submitted, and the indebtedness of the company to said parties as thereby shown, is allowed, adopted, approved, and confirmed, and the president and secretary of the company are hereby authorized and instructed to execute to said above named parties promissory notes of the company, due on demand, evidencing said indebtedness of said company to them with interest as aforesaid." The record of the proceedings of the board of directors thereupon recites the execution of these notes on behalf of the company by the president (Samuel R. Johnson) and secretary (M. J. Burns), and the approval and ratification of said act of execution by the entire board. Secretary Burns submitted his report showing in detail the ownership of the stock of the company as follows: Samuel R. Johnson, 244 shares; George F. Wright, 183 shares; L. B. Williams, 150 shares; G. W. Kingsnorth, 130 shares; M. J. Burns, 32 shares; J. W. Morse, 30 shares; J. T. Hart, 168 shares; Susan E. Hart, 1 share; Mat Goodwin, 1 share; C. Duras, 1 share; J. T. Hart or the Bank of Commerce or its successor, the National Bank of Commerce, 212 shares; total, 1,000 shares. By a resolution introduced by Director Wright, and unanimously adopted by the board of directors, an assessment was made and ordered of 41.625 per cent on the capital stock held by each individual, or 83.25 per cent on the 50 per cent of such stock which remained unpaid. As

against the appellants Williams, Wright, and Johnson, the district court held that the figures thus fixed were controlling, and accordingly rendered a judgment against each of these parties for an amount equal to 83.25 per cent of the unpaid subscription for stock held by such party. It is true that, by subsequent proceedings at the same meeting of the board of directors, these assessments were declared paid and satisfied, but it is to be borne in mind that these proceedings were had by the very directors whose said resolutions declared themselves discharged from an indebtedness owing to the company of which they were the officers. Under the holdings of this court in *Gorder v. Plattsmouth Canning Co.*, 36 Neb., 548; *Ingwersen v. Edgecombe*, 42 Neb., 740; *Tillson v. Downing*, 45 Neb., 549, it was incumbent upon the directors to show affirmatively that they made no use of their official position to secure to themselves an undue advantage over other creditors of the company. They were owing the company an amount equal to fifty per cent of the par value of the stock held by them. This was a fund to which the creditors of the company had a right to resort. (*Farmers Loan & Trust Co. v. Funk, supra.*) The mere fact that the directors, as individuals, owed this company gave them no right to appropriate the assessment on their stock to the payment of debts owing by themselves to the company, to the exclusion of its other creditors. With reference to the resolution whereby the indebtedness of the company was declared discharged by the appropriation to that purpose of the assessments upon the directors, the district court made a special finding which, in view of the evidence, we cannot say was without support. This finding was as follows:

"9. That the said resolution and all the said proceedings purporting to permit or authorize the application of the said assessment upon or towards the said indebtedness of the company to the said defendants respectively were unauthorized, fraudulent, and void, as to

the creditors and stockholders of the said corporation and did not in anywise release the said defendants from or impair their liability or obligation to pay the said assessments respectively, and the same remain valid as to such creditors and stockholders and in full force against the said defendants respectively."

As these directors in due form authoritatively as a board had ascertained and declared the existence of an indebtedness and of an exigency demanding an assessment on the unpaid stock held by themselves, these assessments became, at least as against these directors, an indebtedness duly ascertained which, therefore, was collectible in this action without further preliminaries.

The appeal of Henry W. Yates may be disposed of on principles resembling those above applied. For the fifty per cent of his unpaid subscription of stock the company held his promissory note. His testimony shows that he came into possession of this note by virtue of some arrangement with Mr. Hart, the purchaser of his stock, whereby it was claimed such purchaser's liability was substituted for that of Yates. The district court found adversely to the contention of Mr. Yates and we cannot assume that this finding was unsupported by the evidence, for we have not been able to find in the bill of exceptions the written instrument upon which, apparently, was founded the claim that Hart had been substituted for Yates and the liability of the latter discharged. This contract was identified and offered as Exhibit 134. There was also offered in evidence a note in no way described, except that it was designated as Exhibit 133. There was, moreover, the following offer in connection with the testimony of Mr. Yates: "I will offer in evidence　*　*　*　page 6 and page 31 of one of the ledgers of the Nebraska Insurance Company, which has been identified as Exhibit 30, the said pages being marked by the reporter as Exhibits 135 and 136." In that portion of the bill of exceptions which contains the exhibits we find the following memorandum: "Ex-

hibits 123 to 136, inclusive, are offers relating to, and which were offered in evidence on the part of, the defendants Alexander, Meyer, and Yates." The exhibits thus referred to are not in or with the bill of exceptions; hence we cannot say that the district court misapprehended their provisions because it refused to credit the note of Yates as fully paid. There is found no error in the record and the judgment of the district court is

AFFIRMED.

IRVINE, C., not sitting.