NEBRASKA WHEAT GROWERS ASSOCIATION, APPELLEE, V. A. J. JOHNSON ET AL., APPELLANTS.

FILED JANUARY 7, 1936. No. 29395.

*Peterson & Devoe* and *Harvey W. Hess,* for appellants.

*Mayer & Mayer, contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY, PAINE and CARTER, JJ.

GOSS, C. J.

This is a suit in equity to set aside conveyances to the wife and to subject land to a judgment against the husband. From a decree for plaintiff the defendants appeal.

The judgment on which plaintiff's action was based was obtained against A. J. Johnson and several others on January 21, 1932, for $10,520. The suit was begun July 26, 1928. In the journal entry the court found that defendants, prior to December 16, 1926, unlawfully used assets of plaintiff for the benefit of another corporation. We state this fact to show that the judgment was founded upon tort and not upon contract. No credit therefore was extended to A. J. Johnson because of any land he owned with the title either in his name or in the name of Anna M. Johnson, his wife. A transcript of this judgment was filed in Thayer county August 30, 1932. The instant suit was begun on or about June 20, 1933, after executions had been issued and returned unsatisfied in both Cheyenne and Thayer counties. The purpose of this action was to have the title to 200 acres of Thayer county land standing in the name of Anna M. Johnson decreed to be held by her as trustee for A. J. Johnson and to subject it to the payment of the judgment against her husband. The trial court sustained the prayer of plaintiff, but allowed defendants Johnson a $2,000 homestead right in the premises superior to the lien of plaintiff.

No objection was made by defendants to quitclaim deeds offered by plaintiff showing that this 200-acre farm was conveyed by Johnson and wife on January 31, 1931, to Joseph J. Newman and on the same day Newman conveyed it to Anna M. Johnson. Both deeds were recorded February 14, 1931. It was stipulated that A. J. Johnson originally got title by a deed from Hans W. Larson and wife, re-

corded February 1, 1913, with an expressed consideration of $19,000, defendants reserving the right to show the actual consideration. The evidence shows that Larson traded this land to Johnson for a half section of land in Furnas county, valued in the contract for exchange at $11,800, and Johnson assumed encumbrances of $7,200 on the Thayer county land. No money passed between the parties. It was a trade of equities or interests in the respective lands.

A. J. Johnson had acquired an undivided half interest in the Furnas county land for a stated consideration of $3,500, by a deed dated August 5, 1908, and had acquired the other half for a stated consideration of $5,000 by a deed dated July 6, 1911. The Johnsons testified that in 1907 Mrs. Johnson received $1,183.37 from the estate of her father and also in 1911 received $1,000 from other heirs in settlement of a contest of her father's will threatened by Mrs. Johnson. They testified that this money was invested in the Furnas county land; that it was agreed between them that she should have a deed to the land, "but the Swedish people always looks down on a man that can't have his title to his farm in his name, and that was the reason it wasn't made."

Mrs. Johnson owned a house and lot in Stamford, Harlan county. This was sold and conveyed in November, 1915, and she received $1,800 for it. Mr. Johnson testified that, early in December, 1915, this money was used toward making a payment of $2,000 on the note and mortgage held by the Mutual Benefit Life Insurance Company on the Thayer county farm. A receipt for $2,000, dated December 2, 1915, was introduced in evidence showing payment of that sum on that day and stating that the amount had been indorsed on the principal note.

The Johnsons also testified that, when her father ceased farming, he gave her four good horses. In 1908 they were sold to the Johnson's hired man who was going into farming on his own account, and that he gave his interest-bearing note for $600 for them, which was paid in 1915 in the total

sum of $979.20. That money was also used to help pay off the encumbrance on the Thayer county land.

The total of the items of money produced by Mrs. Johnson and entering into the payment for these farms under the agreement testified to by Mr. and Mrs. Johnson is $4,962.57. They testified that it was in pursuance of the agreement to give her title that the Thayer county farm was deeded to her, as heretofore recited, by the deeds which plaintiff seeks to set aside. The payment of the items by Mrs. Johnson was so long before plaintiff's suit and the trial thereof that it was manifestly difficult for plaintiff to contradict this evidence. ·

The testimony of Mrs. Johnson was to the effect that she had no knowledge of the pending suit or of the judgment against her husband in Cheyenne county. Mr. Johnson testified that he thought that suit had been settled by stipulation. A stipulation for settlement had evidently been made, but it became ineffectual because its terms had not been performed by defendants in that case.

The burden of establishing the *bona fides* of a conveyance by a husband to a wife is upon the grantee. *Luikart v. Tidrick*, 126 Neb. 398, 253 N. W. 414. Under the evidence heretofore stated, Mrs. Johnson showed that she was a creditor of her husband to the extent of $4,962.57 and that the conveyances were made to her in pursuance of an oral agreement that such an act would be performed. "A debtor in failing or insolvent circumstances may prefer one creditor notwithstanding the fact it may be to the exclusion of others, and this rule may include relatives of the debtor who are his creditors." *National Bank of Commerce v. Chapman*, 50 Neb. 484, 70 N. W. 39; *Luikart v. Tidrick*, 126 Neb. 398, 253 N. W. 414.

It was not shown that Mrs. Johnson had any knowledge of plaintiff's pending suit against her husband in which the judgment here relied upon was based. She testified that she had no such knowledge. "To make a conveyance a fraudulent transfer, a fraudulent intent participated in by both parties to the transfer must exist." *Logie v.*

*Snyder*, 129 Neb. 583, 262 N. W. 489. See *Farmers & Merchants Nat. Bank v. Mosher*, 63 Neb. 130, 88 N. W. 552; *State Bank of Beaver Crossing v. Mackley*, 121 Neb. 28, 236 N. W. 165.

Several witnesses testified that the land was worth about the same in 1931 that it was in 1913. Then Johnson exchanged the Furnas county land, in which $8,500 had been invested, for this land and assumed encumbrances of $7,200. Witnesses appraised the land in 1931 as low as $5,200 and $7,200. It was said to be valued for taxing purposes at $11,600, which probably was not far different from its fair market value then or in 1913. We think the value at the time it was conveyed to Mrs. Johnson as a creditor of her husband so far exceeded the debt due her from him that equity ought not to permit her to take the benefit of the legal title to the exclusion of the rights of plaintiff as a creditor. We are of the opinion that the trial court properly allowed defendants a homestead interest in the land, but that it was erroneous to deny Mrs. Johnson's lien upon the land for the amount she had contributed of her own funds towards its purchase. That total of $4,962.57 ought not to be augmented by any increment of interest prior to the date of the original decree, for the reason that Mrs. Johnson has had her enjoyment of the farm or farms since their acquirement.

The judgment of the district court is affirmed as to the allowance of a homestead to defendants, but is reversed as to other respects, with further direction to allow Anna M. Johnson a lien upon the land for $4,962.57, with legal interest from June 25, 1934, the date of the decree, as a first judgment lien, and to allow plaintiff a lien for its judgment as a second lien upon the land.

AFFIRMED IN PART AND REVERSED IN PART.