SALINE STATE BANK OF WILBER, APPELLEE, V. ANTON K. STIPEK ET AL., APPELLANTS.

FILED MAY 26, 1936. No. 29556.

*Bartos, Bartos & Placek* and *C. R. Stasenka,* for appellants.

*J. J. Grimm* and *G. E. Hager, contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY, PAINE and CARTER, JJ.

ROSE, J.

This is an action in the nature of a creditor's bill to cancel a chattel mortgage and a bill of sale and to subject the property described in those instruments to the satisfaction of a judgment in favor of plaintiff. From a decree granting the relief sought by plaintiff, defendants appealed.

Plaintiff is the Saline State Bank of Wilber, the judgment creditor. The defendants are Anton K. Stipek and Mabel Stipek, mortgagors, Anna Stipek, mortgagee, and

Felix Karpisek, purchaser from Anna Stipek. Mabel Stipek is the wife and Anna Stipek the mother of the judgment debtor, Anton K. Stipek.

Following is a summary of some of the facts alleged in the petition: March 14, 1933, Anton K. Stipek, while owning and conducting the Wilber Hatchery, Feed and Coal Company, presented to plaintiff, for the purpose of obtaining credit, a sworn property statement that he owned stock, merchandise, fixtures and bills receivable exceeding the net value of $8,000. August 21, 1933, plaintiff, relying on his statement, lent him $1,425, evidenced by his note. October 1, 1933, Anton K. Stipek and wife gave Anna Stipek a note for $4,221.50 and, as security, a chattel mortgage on all the stock, merchandise, fixtures and equipment of the Wilber Hatchery, Feed and Coal Company. October 14, 1933, mortgagee sold and transferred by bill of sale to Felix Karpisek part of the chattels described in the mortgage for the purported consideration of $2,700. May 9, 1934, plaintiff recovered a judgment against Anton K. Stipek on his note for a past-due, unpaid debt of $1,373.50, on which judgment execution was issued May 21, 1934, and returned *nulla bona* June 2, 1934. In the petition it was further alleged that both the chattel mortgage and the bill of sale were executed without consideration with the intent to hinder, delay and defraud creditors in the collection of their claims against Anton K. Stipek. Knowledge of the fraudulent intent pleaded was imputed to the grantee in each instrument.

The answer of each defendant contained a general denial. The fraud charged in the petition was denied. Consideration and good faith were pleaded in defense. Felix Karpisek answered in addition to his general denial that he made his purchase in good faith October 14, 1933, for a valuable consideration; that he took immediate possession of his property under his purchase and still retains it; that his purchase was without any intent on his part to hinder, delay or defraud creditors in the collection of debts. The reply to the answers was a general denial.

The question presented by the appeal is the sufficiency of the evidence to prove that the instruments assailed by plaintiff were fraudulent as to creditors. Want of consideration as defenses utterly failed. The mother of Anton K. Stipek owned the building in which he conducted his feed and coal business. She took no part in such business and did not meddle in it. She had no pecuniary interest in it. She mortgaged her building for $2,500 and lent the money to him. Part of that sum was applied on a note of his and the balance went into his business. She mortgaged her home for $3,700 and lent the money to him. It also went into his business. As evidence of a debt of $4,221.50 owing by him to his mother, he gave her a note and secured it by the chattel mortgage. In amount the claim of the mother far exceeded that of plaintiff and the character of the consideration with which she parted was not inferior to the debt for which plaintiff recovered judgment. The note and the mortgage were dated October 1, 1933, and the judgment against the son in favor of plaintiff was not recovered until May 9, 1934. Full consideration for the note and chattel mortgage was shown by uncontradicted evidence.

A valid consideration for the transfer from the mother to Karpisek was likewise shown. The purchase price was $2,700. She had previously borrowed from him $800 and evidenced the debt by a note. He applied that sum on the purchase price and paid the remainder to her.

Was the chattel mortgage fraudulent as to plaintiff? The intent with which a son transfers chattels to his mother, while indebted to others, is a question of fact, in a controversy like the present one. Where an insolvent son mortgages chattels to secure a claim of his mother, the transaction is presumptively fraudulent as to other creditors, but the presumption may be overcome by clear and convincing evidence. Fraudulent intent of both parties to a transfer is necessary in proving it void as to creditors. *Logie v. Snyder,* 129 Neb. 583, 262 N. W. 489. An insolvent debtor may in good faith secure one creditor to the

exclusion of others. *Luikart v. Tidrick,* 126 Neb. 398, 253 N. W. 414.

In the light of these rules of law and equity, the entire record in the case at bar has been examined from every standpoint in a trial *de novo.* There is no direct evidence of fraud on the part of any of the contracting parties in litigation. Plaintiff relies on the presumption of fraud arising from the relationship of mother and son and on inferences from circumstances. In acumen and business sagacity the persons charged with fraud did not have any advantage over plaintiff, a banking corporation. With the aid of capital furnished from time to time by both the bank and Anna Stipek to the latter's son, he made a failure of the business which he had owned and operated in the name of the Wilber Hatchery, Feed and Coal Company; lost his credit; became insolvent; gave his mother possession and left for Arizona in search of employment. She was not versed in business affairs. She had mortgaged a portion of her patrimony for her son. An interpreter was required while she testified as a witness. The transactions between her son and the bank had been conducted for the latter by its cashier who was familiar generally with the son's business, property and standing financially. The cashier had lent the son the bank's money to the extent of $4,000 and had made collections until the debt was reduced to $1,373.50. The cashier testified as a witness to the effect that the son furnished the bank a property statement which failed to disclose the nature and extent of the indebtedness of the son to his mother. There is convincing evidence, however, that the cashier knew the son was indebted to his mother and that the mother did not know her son was indebted to the bank. The son testified in substance that he did not mortgage his property with intent to defraud creditors or to hinder or delay them in the collection of their claims. His testimony and that of the cashier show conclusively that he paid the bank at least $103.90 after the chattel mortgage was executed. The mother testified to her good faith and to absence of

any fraudulent intent. The son's connection with the hatchery after he returned from Arizona is pointed out as a badge of fraud, indicating that his mother held the incubator property in secret trust for him; but the better view of the evidence is that the possession was hers and that he was manager for her, after failing to find employment elsewhere. Even if the son's intent to defraud could fairly be inferred from any circumstance in evidence, there is nothing substantial to impute such an intent to his mother. When full consideration for the chattel mortgage is considered with the evidence of good faith and the proper inference from the established facts and circumstances, the presumption of fraud arising from the family relationship is completely overthrown. The evidence is wholly insufficient to justify the cancelation of the chattel mortgage for fraud.

Was the sale from Anna Stipek to Karpisek fraudulent? These parties were not related. Neither was indebted to the bank. Anna Stipek had borrowed from Karpisek $800 and evidenced the debt by an unsecured note. Karpisek bought this property and took immediate possession of it. There is a conflict of testimony between him and the cashier as to the former's knowledge that Anton K. Stipek was indebted to the bank prior to the sale, but this does not seem to be material in view of other evidence. The cashier himself testified in effect that Karpisek was in the bank a number of times before the sale; that he did not feel safe in making the purchase on account of the indebtedness to the bank; that he was making arrangements to buy the stock and asked if it would be safe to do so. The answer of the cashier, referring to the stock of merchandise and to the unpaid note of Anton K. Stipek to the bank, follows:

"I says, 'Go ahead, buy it, but just reserve enough money out of this consideration that this note be paid.'"

Plaintiff is bound by this testimony. It contains a direction by the cashier to Karpisek to make the very purchase that the bank seeks to cancel for fraud. The property was not encumbered. The owner had a right to sell it.

Karpisek had a right to buy it. The cashier, according to his own testimony, trusted the bank to retain enough of the purchase price to pay its claim. That did not create a lien on the property nor prove fraud in the sale itself. Mere knowledge of the debt, if properly shown, was not evidence of an intent to defraud creditors by a subsequent purchase. The bank did not prove a written obligation of the purchaser to answer for the debt of Anton K. Stipek. In any event there was no proof of fraud on the part of Anna Stipek. Fraud by both parties was essential to plaintiff's case.

In the argument on behalf of plaintiff it was asserted that defendants failed to comply with the bulk sales law. Comp. St. 1929, sec. 36-501. This was not pleaded in the petition and is not available on appeal.

For insufficiency of the evidence to prove the fraud alleged by plaintiff, the judgment of the district court is reversed and the action dismissed.

REVERSED AND DISMISSED.