LAVERNE R. SCHALL, APPELLANT, V. ANDERSON'S IMPLEMENT, INC., A NEBRASKA CORPORATION, ET AL., APPELLEES.
484 N.W.2d 86

Filed May 15, 1992.    No. S-89-358.

John S. Mingus, of Mingus & Mingus, for appellant.

W. Gerald O'Kief for appellees.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

GRANT, J.

Plaintiff-appellant, LaVerne R. Schall, filed a petition seeking to set aside a deed of trust executed by the defendant Anderson's Implement, Inc. (Anderson's Inc.), to defendant Richard C. Anderl, trustee, on the basis that the transaction by the corporation was done to defraud Schall in his efforts as a judgment creditor to collect a judgment obtained in a earlier lawsuit against Anderson's Inc. Defendants Kenneth G. Anderson and Donald G. Anderson were beneficiaries in the trust deed. Other defendants were named in the original petition, but have been dismissed for various reasons, and no appeal is taken from those court dismissals.

The matter was tried as a case in equity to the court. At the close of plaintiff's evidence, the defendants moved to dismiss because "evidence [adduced at the trial failed] to state a cause of action against the defendants . . . ." The trial court granted the motion and dismissed the case. Schall appeals that judgment to this court. We reverse and remand for further proceedings.

Schall assigns numerous errors in his appellate brief. They may be distilled into one. Schall contends that the district court erred in granting defendants' motion to dismiss because plaintiff presented sufficient evidence to prove that dividends to shareholders were paid at a time when the corporation was insolvent and that the execution of the deed of trust was a fraudulent conveyance.

On appeal from the district court to an appellate court, an equity case is tried de novo on the record, requiring the

appellate court to reach a conclusion independent of the findings of the trial court. *Dowd v. Board of Equal., ante* p. 437, 482 N.W.2d 583 (1992). When a defendant in an equity action, however, moves to dismiss plaintiff's action at the close of plaintiff's evidence, the defendant, for the purposes of considering his motion, admits the truth of plaintiff's evidence and testimony, together with every inference which may fairly and reasonably be drawn therefrom. The court must then determine, as a question of law, whether plaintiff's evidence has made a prima facie case, and if so, the motion is to be overruled. *Hulse v. Schelkopf*, 220 Neb. 617, 371 N.W.2d 673 (1985); *Marco v. Marco*, 196 Neb. 313, 242 N.W.2d 867 (1976).

Viewed in that light, the record before the court shows the following facts: Anderson's Inc. was incorporated in 1975 as a closely held subchapter S corporation, with its fiscal year running from February 1 through January 31. The corporation's only stockholders were Kenneth D. Anderson; his wife, Mildred; and their two sons, Kenneth G. and Donald. The stockholders were also the corporation's entire board of directors. Each was a 25-percent owner of the corporation, which had a stated capital in 1975 of $82,400.

On January 29, 1980, the four-person board of directors was advised that earned surplus profits were $300,000 and that the board should declare a cash dividend. The suggestion was brought before the board and approved. A cash dividend of $75,000 was paid to each stockholder. After the payment of the dividend, each stockholder loaned $50,000 to the corporation. In exchange, the corporation issued notes of indebtedness to each creditor stockholder.

On February 1, 1980, Kenneth D. and Mildred resigned from the board, and each of them entered into an "Agreement for Sale and Purchase of Stock" with Anderson's Inc. The agreement called for a total purchase price of $95,000 plus interest to each of the parents for the company to buy out the parents' stock. The agreement provided for issuing to the parents promissory notes signed by the remaining board members. No security for the notes was to be given.

At this time, February 1980, corporate records indicated the corporation had a total of $290,000 of unsecured debt to the

parents, consisting of the $190,000 described above plus the total of the loans made by the parents in the amount of $100,000 on January 29, 1980. The board of directors for Anderson's Inc. after February 1, 1980, consisted of only the two sons, Kenneth G. and Donald.

Plaintiff worked for Anderson's Inc., beginning in May 1978, at a monthly salary plus a 5-percent commission on the profit of the parts department. Payments made under this agreement were satisfactory to plaintiff and Anderson's Inc. This contract between Schall and Anderson's Inc. was renewed in February 1979. Upon the renewal of Schall's contract, both parties agreed to increase Schall's compensation to include a 30-percent commission on the "net profit" of the parts department. The contract was unclear as to the calculation of "net profit," and in early 1980 a dispute arose between Schall and Anderson's Inc. over the actual commission due to Schall under the February 1979 contract.

While this dispute was going on, the corporation made another declaration of dividends. In January 1981, the two-member board voted to declare another dividend of $166,302 to each of the two shareholders. Upon receipt of the dividend, the two shareholders loaned back to the company $156,302 each, and received in exchange promissory notes from Anderson's Inc. With this transaction, the corporation owed the two remaining shareholders a total of over $400,000 in unsecured debt, consisting of the loans just described plus the $100,000 loaned to the corporation in January 1980.

After reaching an impasse in negotiations to recover his commission, plaintiff filed a suit against Anderson's Inc. The case was tried on April 2 and 3, 1985. Upon conclusion of the trial, the trial court entered an order continuing the case "pending briefing by the parties."

On May 1, 1985, less than 1 month after completion of the trial, but before a final order was rendered by the trial court, Anderson's Inc. executed a deed of trust for the purpose of securing "[p]ayment of the indebtedness described on Exhibit 'A'." Exhibit A listed the "indebtedness secured" as promissory notes of $206,302.88 to both Kenneth G. and Donald, notes of $95,000 to both Kenneth D. and Mildred, and notes of $50,000

to both Kenneth D. and Mildred. The corporation executed a deed of trust to Anderl, the trustee, on all the real estate owned by the corporation.

On September 3, 1985, the district court for Brown County filed its memorandum decision and order in the Schall-Anderson's Inc. case. The order found that Anderson's Inc. did withhold payment of money owed to Schall in the amount of $38,157.61, and the court rendered its judgment in that amount against Anderson's Inc. On October 3, 1986, the Brown County sheriff served a writ of execution upon Anderson's Inc., but found no unencumbered personal or real property in the corporation's name, and the writ was returned unsatisfied.

Without notifying the trustee, Anderson's Inc. undertook to sell the land described in the trust deed. They advertised that the land was to be sold on December 12, 1986, and on that same day Schall filed this action. In Schall's second amended petition, he sought to enjoin conveyance of the deeded property, to have the instrument found invalid, and to receive a priority lien on the land in question.

On January 9, 1989, trial in the present action began. Plaintiff introduced his evidence, and cross-examination was conducted by defendants. When plaintiff rested, defendants moved for dismissal of plaintiff's petition for failure to introduce evidence entitling the plaintiff to relief. The motion was sustained. Plaintiff timely appealed.

Schall's first cause of action in his second amended petition asserted that the "Deed of Trust was executed to hinder, delay or defraud [Schall]." This contention is based on an alleged fraudulent conveyance.

We recognize that in 1989 the Nebraska Legislature enacted the Uniform Fraudulent Transfer Act (UFTA), Neb. Rev. Stat. §§ 36-701 to 36-712 (Cum. Supp. 1990). The UFTA replaced the 1980 Uniform Fraudulent Conveyance Act (UFCA), Neb. Rev. Stat. §§ 36-601 to 36-613 (Reissue 1988), repealed in 1989. Any rights, however, which plaintiff Schall might have against defendants in the lawsuit before us accrued on May 1, 1985, when the deed of trust was executed. Statutes covering substantive matters in effect at the time of the transaction

govern, not later enacted statutes. *Holthaus v. Parsons*, 238 Neb. 223, 469 N.W.2d 536 (1991); Neb. Rev. Stat. § 49-301 (Reissue 1988). The UFCA, in effect at the time of the transaction, controls the disposition of this case.

Section 36-605 provided:

> Every conveyance made without fair consideration when the person making it is engaged or is about to engage in a business or transaction for *which the property remaining* in his or her hands after the conveyance is an *unreasonably small capital*, is fraudulent as to creditors and as to other persons who become creditors during the continuance of such business or transaction without regard to his or her actual intent.

(Emphasis supplied.)

Thus, under the UFCA, each conveyance by someone in business had to satisfy two requirements: (1) It must have been for fair consideration, and (2) it must have left intact a sufficient amount of property to reasonably capitalize the business. The statute specifically negated any need for a court to find actual intent to defraud.

As to fair consideration, § 36-603 provided: "Fair consideration is given for property, or obligation . . . (b) When such property, or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property, or obligation obtained."

Section 36-603 allowed for conveyance of an interest in property to secure an antecedent debt, but was qualified in two respects. In order to pass the first half of the fraudulent conveyances test, § 36-603 required that the antecedent debt must not have been disproportionately small as compared with the value of the property and that the transaction must have been completed in "good faith."

Evidence and testimony at trial indicated that the total amount due on all notes at the time of execution of the deed was $504,704.30. Evidence further indicated that Anderson's Inc., at the time of the conveyance, owned a total of $188,938 worth of real property, appurtenances, buildings, and improvements which could have secured the debt. Since the debt exceeded the

value of the property, this debt was obviously not "disproportionately small as compared with the value of the property."

With respect to "good faith," as used in § 36-603(b), this court has stated: " 'Good faith,' among other characteristics, encompasses an absence or freedom from intent to defraud. (Citations omitted.) Consequently, good faith and fraud are mutually exclusive terms; the presence of one excludes the existence of the other in the same subject." *Gifford-Hill & Co. v. Stoller*, 221 Neb. 757, 764-65, 380 N.W.2d 625, 630 (1986).

While § 36-605 specifically negated the need to prove fraudulent intent, courts will scrutinize a transaction for elements of circumstantial proof of fraud to determine if it was completed in good faith. *Southern Lumber & Coal v. M. P. Olson Real Est.*, 229 Neb. 249, 426 N.W.2d 504 (1988).

In *Brown v. Borland*, 230 Neb. 391, 394-95, 432 N.W.2d 13, 16 (1988), this court recognized:

> Under the old conveyances to defraud creditors act, every conveyance made with intent to defraud creditors was void. Case law interpretation provided that a conveyance made in good faith and for adequate consideration was not made with intent to defraud. Section 36-603 of the [UFCA] also requires adequate consideration and good faith dealings to prove a conveyance was not fraudulent. Therefore, we see no reason why past case law rules on good faith and adequate consideration should not remain in effect.
>
> . . . It is through case law that the badges of fraud and presumptions were developed. The current uniform act, in § 36-307, preserves distinction of "intent presumed at law" from "intent to defraud." Therefore, we find that existing rules on badges of fraud and their presumptions are still in effect under the uniform act.

The badges of fraud with which a court concerns itself were discussed in *Gifford-Hill & Co. v. Stoller*, 221 Neb. at 763, 380 N.W.2d at 630:

> " ' "Badges of fraud" . . . are said to be facts which throw suspicion on a transaction, and which call for an explanation. . . . More simply stated, they are signs or

marks of fraud. They do not of themselves or per se constitute fraud, but they are facts having a tendency to show the existence of fraud, although their value as evidence is relative not absolute. They are not usually conclusive proof; they are open to explanation. They may be almost conclusive or they may furnish merely a reasonable inference of fraud, according to the weight to which they may be entitled from their intrinsic character and the special circumstances attending the case. Often a single one of them may establish and stamp a transaction as fraudulent. When, however, several are found in the same transaction, strong, clear evidence will be required to repel the conclusion of fraudulent intent . . . .' "

Courts have noted that certain circumstances which accompany a transaction may deserve some explanation. Circumstances which may not, on their face, be illegal, may in a certain transaction be contrary to public policy. See Unif. Fraudulent Conveyance Act § 7 notes 15 to 25, 7A U.L.A. 520-24 (1918).

We have said:

"The generally recognized badges of fraud are the lack of consideration for the conveyance, the transfer of the debtor's entire estate, relationship between transferor and the transferee, the pendency or threat of litigation, secrecy or hurried transaction, insolvency or indebtedness of the transferor, departure from the usual method of business, the retention by the debtor of possession of the property, and the reservation of benefit to the transferor. 37 Am. Jur. 2d *Fraudulent Conveyances*, § 10 at 701."

*Gifford-Hill & Co. v. Stoller*, 221 Neb. at 764, 380 N.W.2d at 630.

The evidence before the court suggests that Schall, at the very least, raised a question as to the good faith of the board of directors in the transfer, when the board authorized the execution of the deed of trust. The circumstantial evidence of those badges of fraud discussed above has placed upon the defendants the burden of presenting clear evidence to repel the conclusion of fraudulent intent.

Evidence shows that even after voluntary liquidation of all of

its assets in 1986, Anderson's Inc. owed money to a business creditor in an approximate amount of $40,000, to professionals retained by the corporation, and to shareholders on various promissory notes. All of this was in addition to the judgment obtained by Schall 1 year earlier, in the amount of $38,157.61.

We find that plaintiff introduced sufficient evidence for the trial court to find that the directors were aware of the unsecured status of the shareholders' (i.e., their own) debt and the impending ruling of the district court as to Schall's lawsuit and that such knowledge played at least some part in the board's decision to secure the shareholders' debt.

We do not hold that the act of securing the shareholders' notes, in itself, was fraudulent. Section 36-603 provided that an antecedent debt is fair consideration for property received to secure that debt. This has been upheld even when done by a debtor in failing times. *Saline State Bank v. Stipek*, 131 Neb. 100, 267 N.W. 234 (1936); *Nebraska Wheat Growers Ass'n v. Johnson*, 130 Neb. 99, 264 N.W. 165 (1936). In general, repayment of antecedent debt constitutes fair consideration, but such a transaction will require closer scrutiny if the transferee is an officer, director, or major stockholder of the transferor. *Atlanta Shipping Corp., Inc. v. Chemical Bank*, 818 F.2d 240 (2d Cir. 1987); *Tillson v. Downing*, 45 Neb. 549, 63 N.W. 836 (1895).

When the deed of trust in this case is put into context, substantial questions are raised as to the good faith of the directors. The deed of trust was executed by directors who, by their actions, gave themselves and their parents as creditors a secured interest valued at over $500,000 in corporation property, to the immediate detriment of Schall, as well as other creditors.

Yet another badge of fraud considered by a court analyzing a conveyance is the insolvency or indebtedness of the transferor. In the context of the UFCA, one is insolvent "when the present fair salable value of his or her assets is less than the amount that will be required to pay his or her probable liability on his or her existing debts as they become absolute and matured." § 36-602(1).

Evidence of the corporation's insolvency is found in the

payment schedules of the debt owed by Anderson's Inc. to Kenneth D. and Mildred Anderson for redemption of their stock. The "Agreement for Sale and Purchase of Stock" provides:

> 3. . . . The purchase price [$95,000] shall be paid as follows:

> . . . 240 monthly payments of 395.83, commencing on the 1st day of February, 1980, and a like sum due and payable on the 1st day of each month thereafter until . . . paid in full.

> . . . .

> 5. . . . It is further agreed by and between the parties hereto that Seller shall, from the date of this Agreement, retain no security interest, mortgage, or lien with respect to the stocks sold.

For nearly 2 years Anderson's Inc. paid upon this debt the required amount within the required time. Then, beginning in March 1983, the company made payments only every 2 to 3 months. In 1984, a total of only five payments were made. The record shows only one payment made in 1985 and only four more payments made before the liquidation of the company assets.

At the time of the execution of the deed of trust, the corporate debt was far outrunning its equity. It seems clear that the corporation could not pay its debts as they came due.

The facts presented raise some question as to the good faith of the corporation in securing the antecedent debts, and thus "fair consideration" in this transaction is questionable.

Section 36-605 required the corporation to have a reasonable amount of capital after the conveyance. This is a fact question.

Evidence suggests that the corporation may not have even had adequate capital before the trust deed was executed, but almost certainly it did not afterward. As shown by the corporation's income tax returns, at fiscal yearend 1984, Anderson's Inc. had $1.5 million in total debt and $577,236 in equity. The following year, however, the company showed only $273,273 in equity and $1.3 million in debt, and in 1986 that gap increased to $88,828 in equity and $682,976 in debt.

Thus, we find facts have been alleged and adduced which

indicate both the presence of some of the badges of fraud recognized in this state and the possible absence of adequate capital. This raises a question as to the fraudulent intent of the directors in executing this deed of trust, which might lead to the conclusion that the intent surrounding the conveyance of the deed of trust was to hinder, delay, or defraud Schall from executing upon his validly obtained judgment. Likewise, some facts alleged have raised inferences which might be adverse to Anderson's Inc.

Schall has presented sufficient evidence to raise a question regarding whether the deed of trust was executed to hinder, delay, or defraud him. The judgment of dismissal is reversed, and the cause is remanded for further proceedings consistent with this opinion.

REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.