BARBRA SHKOLNICK, APPELLANT, V. AMERICAN FAMILY MUTUAL INSURANCE COMPANY, APPELLEE.

506 N.W.2d 356

Filed September 21, 1993.   No. A-92-036.

Robert D. Mullin, Jr., of McGrath, North, Mullin & Kratz, for appellant.

Eugene L. Hillman, of McCormack, Cooney, Mooney, Hillman & Elder, for appellee.

CONNOLLY, HANNON, and MILLER-LERMAN, Judges.

CONNOLLY, Judge.

This appeal arises from the summary judgment of the trial court in favor of the appellee, American Family Mutual Insurance Company (American Family). The appellant, Barbra Shkolnick, was injured in an automobile accident and claimed benefits pursuant to her parents' underinsured motorist (UIM) coverage with American Family. American Family denied her claim on grounds that its UIM liability had been extinguished because Shkolnick had received benefits from other sources in an amount that exceeded the limit of American Family's UIM

coverage. The trial court found as a matter of law that Shkolnick had no claim against American Family. We affirm.

## I. FACTS

### 1. MULTIPLE RECOVERIES ON INJURY CLAIM

On December 23, 1989, Shkolnick was riding as a passenger in an automobile driven by Catherine Dunn when an automobile driven by Kelly Armstrong crossed the centerline of the road and crashed head-on into the Dunn vehicle. The parties stipulated that Armstrong was at fault. Shkolnick stated in her petition that on impact she was propelled through a backseat window of the Dunn vehicle, causing her to suffer a host of severe and permanent injuries.

The occupants of the Dunn and Armstrong vehicles made multiple claims against Armstrong's insurer, Leader National Insurance Company (Leader). Leader's liability limit was $50,000 for the entire accident, with a $25,000 limit for injury to any one person. Pursuant to an agreement by all interested parties, Shkolnick received $18,500 of the total benefits paid out by Leader.

The Dunn vehicle was insured by St. Paul Fire and Marine Insurance Company (St. Paul). The Dunns' policy with St. Paul provided single-limit UIM coverage of $300,000. Pursuant to an agreement by all interested parties, Shkolnick received $127,000 of the total benefits paid out by St. Paul.

### 2. DISPUTE WITH AMERICAN FAMILY ON UIM COVERAGE

Shkolnick also was covered by her parents' automobile insurance policy with American Family. The Shkolnicks' policy with American Family provided UIM coverage of up to $300,000 per accident, with a $100,000 limit per person. Neb. Rev. Stat. § 60-580 (Reissue 1988) states:

> (1) In the event an insured is entitled to underinsured motorist coverage under more than one policy of motor vehicle liability insurance, the maximum amount an insured may recover shall not exceed the highest limit of any one such policy.

> (2) When multiple policies apply, payment shall be made in the following order of priority, subject to the limit

of liability for each applicable policy:

    (a) A policy covering a motor vehicle occupied by the injured person at the time of the accident;

    (b) A policy covering a motor vehicle which came into contact with the insured while a pedestrian; and

    (c) A policy covering a motor vehicle not involved in the accident with respect to which the injured person is an insured.

Thus, in Shkolnick's case, payment for UIM coverage had to be sought first from St. Paul, then from American Family.

Neb. Rev. Stat. § 60-578 (Reissue 1988), which was in force at the time Shkolnick was injured, stated:

    (1) The maximum liability of the insurer under the underinsured motorist coverage shall be the lesser of:

    (a) The difference between the limit of underinsured motorist coverage and the amount paid to the insured by or for any person or organization which may be held legally liable for the bodily injury [of the insured]; or

    (b) The amount of damages sustained but not recovered.

    (2) In no event shall the liability of the insurer under such coverage be more than the limits of the underinsured motorist coverage provided.

The parties agreed that American Family's $100,000 UIM limit for Shkolnick's injuries should be reduced by $18,500, the amount Shkolnick had recovered from Leader, the insurer of the tort-feasor. A dispute arose over American Family's insistence that the $127,000 Shkolnick received from St. Paul also should be credited toward American Family's UIM liability. Obviously, such a credit would wipe out the $81,500 remainder of American Family's UIM coverage for Shkolnick and completely discharge American Family from UIM liability.

### 3. ACTION AND JUDGMENT

Shkolnick sued American Family for $81,500, the difference between the limit of the UIM coverage ($100,000) and the amount paid to Shkolnick by Leader ($18,500). Shkolnick acknowledged that the benefits paid by Leader, the insurer of the tort-feasor, could be applied to reduce American Family's

UIM coverage pursuant to § 60-578, but she argued that benefits paid by St. Paul could not be used to reduce American Family's UIM coverage because St. Paul did not insure the tort-feasor. St. Paul insured the Dunn vehicle in which Shkolnick had been riding, but the driver of the Dunn vehicle was not the tort-feasor. Shkolnick asserted that the term "legally liable" in § 60-578 refers only to a person or organization that pays on behalf of the tort-feasor. Thus, according to Shkolnick, the UIM benefits paid by St. Paul could not be used to reduce American Family's UIM coverage because the driver of the Dunn vehicle was not legally liable in tort for Shkolnick's injuries.

American Family answered that Shkolnick was not entitled to any recovery because its $100,000 UIM limit had been extinguished by payments Shkolnick had received from Leader ($18,500) and St. Paul ($127,000). American Family moved for summary judgment. Shkolnick responded with a motion for partial summary judgment in her favor. After a hearing on the motions, the trial court found that the payment Shkolnick had received from St. Paul constituted an amount paid by an organization legally liable for Shkolnick's injuries as described in § 60-578, which meant that Shkolnick had received benefits from organizations legally liable for her injuries in the amount of $145,500, an amount in excess of American Family's $100,000 liability limit for UIM coverage. Thus, the difference between American Family's limit and the amount recovered by Shkolnick from legally liable parties was not $81,500, but, instead, a negative $45,500. Therefore, the trial court reasoned, Shkolnick was entitled to nothing from American Family. The trial court sustained American Family's motion for summary judgment, overruled Shkolnick's motion for partial summary judgment, and dismissed Shkolnick's petition.

## II. ASSIGNMENT OF ERROR

Shkolnick argues that the trial court erred in finding that American Family's UIM liability was reduced by the amount paid by St. Paul as well as by the amount paid by Leader.

## III. STANDARD OF REVIEW

On appellate review of a summary judgment, the evidence is

viewed in a light most favorable to the party against whom the judgment was granted and such party is given the benefit of all reasonable inferences deducible from the evidence. *Murphy v. Spelts-Schultz Lumber Co.*, 240 Neb. 275, 481 N.W.2d 422 (1992).

On a matter of law, an appellate court must reach a conclusion independent from that of the trial court. *Nebraska Builders Prod. Co. v. Industrial Erectors*, 239 Neb. 744, 478 N.W.2d 257 (1992).

## IV. ANALYSIS

A summary judgment is to be granted only when the record discloses that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. See *Murphy v. Spelts-Schultz Lumber Co., supra.* There is in the instant case no dispute over the facts. The only dispute is over the legal question of whether the $127,000 paid to Shkolnick by St. Paul should have been applied to reduce American Family's UIM liability to Shkolnick.

### 1. St. Paul is Legally Liable

Shkolnick argues that the $127,000 in UIM benefits that she received from St. Paul should not be credited toward American Family's UIM coverage because St. Paul was not an organization "legally liable" to her as that term is used in § 60-578. Shkolnick contends that in § 60-578, "legally liable" means liable in tort. If that is the case, then the only legally liable organization in this case is Leader, the insurer of the tort-feasor. Consequently, Shkolnick argues that only the $18,500 recovered from Leader should be credited toward American Family's UIM coverage.

Shkolnick insists that the reference to legal liability in § 60-578 refers only to tort liability and not to contractual liability, but she offers no germane authority to support this proposition, nor do we find any. The relevant entries in Black's Law Dictionary include the following excerpts from case law in various jurisdictions:

> **Legal liability**. A liability which courts recognize and enforce as between parties litigant. . . .
>
> . . . .

**Legally liable**. Liable under law as interpreted by courts. . . . Liability imposed by law or liability which law fixes by contract. . . .
. . . .

**Liability**. . . . [A]n obligation one is bound in law or justice to perform . . . ; condition of being actually or potentially subject to an obligation; condition of being responsible for a possible or actual loss . . . ; condition which creates a duty to perform an act immediately or in the future . . . ; duty to pay money or perform some other service . . . ; every kind of legal obligation, responsibility, or duty . . . ; responsibility for torts . . . ; the state of being bound or obliged in law or justice to do, pay, or make good something; the state of one who is bound in law and justice to do something which may be enforced by action . . . .
. . . .

**Liability insurance**. Contract by which one party promises on consideration to compensate or reimburse other if he shall suffer loss from specified cause . . . .

**Liable**. Bound or obliged in law or equity; responsible; chargeable; answerable; compellable to make satisfaction, compensation, or restitution. . . .

Exposed or subject to a given contingency, risk, or casualty, which is more or less probable. . . . Exposed, as to damage, penalty, expense, burden, or anything unpleasant or dangerous. . . .

Black's Law Dictionary 805-06, 823-24 (5th ed. 1979). We find nothing in the case law cited by the parties, nothing in the record, and nothing in the generally accepted meaning of legally liable as reflected in the case law cited in Black's Law Dictionary to support the distinction between tort and contractual liability that Shkolnick urges us to accept.

Shkolnick argues that the enactment of § 60-580 indicates that the Nebraska Legislature intended to treat providers of UIM coverage as a class separate from insurers of tort-feasors. We reach a different conclusion, particularly when we read § 60-580 in conjunction with § 60-578. We find that the Legislature enacted § 60-580 to clarify the order in which payments will be made when more than one person or

organization is legally liable to pay UIM benefits to the injured party. Under § 60-580(2)(a), St. Paul was legally liable to appropriately compensate Shkolnick for her bodily injuries because it insured the vehicle in which Shkolnick was riding when she was injured by an underinsured motorist. We fail to see how St. Paul was any less legally liable to Shkolnick for her bodily injuries than Leader was.

   Section 60-578 allowed an insured's own carrier to reduce its UIM liability to the insured by the amount of benefits paid to the insured by any person or organization legally liable to the insured for bodily injury; for purposes of determining the amount of the reduction of the UIM liability of the insured's own carrier, a payment of UIM benefits to the insured by the insurer of the vehicle in which the insured was riding is no different from a payment of benefits to the insured by the insurer of the tort-feasor.

### 2. UNCONDITIONAL DISCHARGE OF UIM LIABILITY

Shkolnick correctly points out that under § 60-580, an insured entitled to UIM coverage under more than one policy may recover a maximum amount up to "the highest limit of any one such policy," which in this case would be the $300,000 available under the St. Paul policy. Shkolnick apparently argues that until she has received the maximum amount of benefits available under § 60-580, American Family is liable to her for its policy limit of $100,000, less any payments made to Shkolnick by the insurer of the tort-feasor. That position is rendered untenable by our ruling that St. Paul was a legally liable organization under § 60-578 whose UIM benefits were properly credited toward American Family's UIM liability. Regardless of how much of the $300,000 limit Shkolnick had recovered, American Family was discharged from UIM liability when the total amount of benefits Shkolnick had received from Leader ($18,500) and St. Paul ($127,000) exceeded $100,000.

### 3. AMENDMENT OF § 60-578

   Shkolnick acknowledges the need to prevent a double recovery by an insured, but she nonetheless argues that the setoff provision of § 60-578 should not be construed in such a way that it prevents an injured party from recovering full and

fair compensation. Shkolnick asserts that "if preventi[on] of a double recovery is the goal, that goal can more fairly be achieved by allowing a set-off for non-liability benefits received against the damages awarded rather than against the UIM limits of liability." Brief for appellant at 17. The Legislature amended § 60-578 in 1990 to operate in essentially the manner outlined by Shkolnick in her brief. Under the revised version of § 60-578, an insured's own carrier must compensate the insured to the limit of the carrier's UIM coverage if, after payments by any other legally liable person or organization pursuant to § 60-580, the insured still has not been fully compensated for his or her injuries. The amount for which the insured's own carrier can be liable for UIM coverage is no longer the difference between the limit of the carrier's coverage and amounts already paid to the insured by legally liable persons or organizations; instead, it is the difference between the damages sustained by the insured and the amounts already paid to the insured by any legally liable person or organization, with the condition that the maximum liability of the insured's own carrier cannot exceed the liability limit for UIM coverage set out in the insured's policy. See § 60-578 (Cum. Supp. 1992).

If her cause of action had accrued after enactment of the revised version of § 60-578, or if the Legislature had included in the amended statute language stating that it should be applied retroactively, then Shkolnick would be entitled to recover up to $100,000 from American Family, assuming that there were still damages in that amount not yet compensated. However, the revised version of § 60-578 is not applicable to Skholnick's case. A legislative act operates only prospectively and not retrospectively unless the legislative intent and purpose that it should operate retrospectively is clearly disclosed. *Young v. Dodge Cty. Bd. of Supervisors*, 242 Neb. 1, 493 N.W.2d 160 (1992). Statutes covering substantive matters in effect at the time of a transaction govern, not later enacted statutes. *Schall v. Anderson's Implement*, 240 Neb. 658, 484 N.W.2d 86 (1992).

#### 4. CREDIT FOR UIM PAYMENTS FROM OTHER SOURCES

Finally, Shkolnick argues that American Family's own policy provision regarding reduction of its UIM liability prevents

American Family from reducing its UIM exposure by crediting toward its UIM liability any UIM benefits paid by other insurers. The provision states that American Family's UIM coverage will be reduced by "[a] payment made or amount payable by or on behalf of any person or organization which may be legally liable, or under any collectible auto liability insurance, for loss caused by an accident with an underinsured motor vehicle." (Emphasis omitted.) Shkolnick claims that the reference to "any collectible auto liability insurance" indicates that reductions to American Family's UIM coverage are permitted only for payments by or for a tort-feasor based on direct tort liability. Shkolnick maintains that American Family chose to assert less than its full rights under § 60-578 (Reissue 1988) by precluding itself from using UIM payments by other insurers to reduce its own UIM liability. We disagree. Such an interpretation of the provision on UIM reductions would require us to ignore the clause in the provision that tracks the language of § 60-578. By declaring that its UIM liability will be reduced by payments "by or on behalf of any person or organization which may be legally liable," American Family has asserted the full measure of its rights under § 60-578, including the right to reduce its UIM exposure by the amount of UIM benefits Shkolnick has recovered from other legally liable sources.

## V. CONCLUSION

By virtue of its UIM coverage on the Dunn vehicle, St. Paul was an organization legally liable to Shkolnick for her injuries. The UIM payment made by St. Paul pursuant to that legal liability was properly applied by the trial court to reduce and, in this case, extinguish American Family's UIM liability. Therefore, we affirm the judgment of the trial court sustaining American Family's motion for summary judgment.

AFFIRMED.