T.C. Memo. 1996-530


UNITED STATES TAX COURT


JEAN A. STANKO, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 25200-91.                    Filed December 2, 1996.


<u>Robert B. Creager</u> and <u>John Stevens Berry</u>, for petitioner.

<u>William R. Davis</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

COLVIN, <u>Judge</u>:  Respondent determined that petitioner is liable as a successor transferee for the 1985 income tax and additions to tax owed by Stanko Packing Co., Inc. (Stanko Packing), as follows:  An income tax deficiency in the amount of $1,324,964, and additions to tax for failure to file under

section 6651(a) in the amount of $323,806, for negligence under section 6653(a)(1) and (2) in the amounts of $66,248 and 50 percent of the interest due on $1,295,223, and for failure to pay corporate estimated income tax under section 6655 in the amount of $83,203.

After concessions, the issues for decision are:

(1) Whether petitioner is barred by res judicata from contesting that Stanko Packing's liability for income tax and additions to tax for 1985 are other than as decided in Stanko v. Commissioner, T.C. Memo. 1993-513, affd. without published opinion 42 F.3d 1402 (9th Cir. 1994); and that her former husband, Rudy Stanko (Stanko), is liable as a transferee of Stanko Packing for its income tax and additions to tax for 1985. We hold that she is.

(2) Whether, and if so the extent to which, petitioner is liable under Nebraska law for the 1985 income tax and additions to tax of Stanko Packing Co. as a successor transferee of its assets. We hold that she is liable for the amount of 1985 income tax and additions to tax of Stanko Packing stipulated by the parties.

(3) Whether the value of the Packerland note when Stanko transferred it to petitioner was $2,806,979 as respondent contends; $501,240 as petitioner contends; or some other amount. We hold that the value was $2,806,979.

Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the year at issue, and Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

A.  Petitioner

Petitioner lived in Scottsbluff, Nebraska, when she filed the petition.  Scottsbluff is in Scotts Bluff County.

Petitioner has a bachelor of science degree from Oregon State University.  She worked in Denver as a medical research chemist for 4 years before she married Stanko.  In 1973, petitioner and Stanko were married, and petitioner moved to Gordon, Nebraska.  Petitioner quit working outside the home.  She and Stanko had four children.

B.  Rudy Stanko and Stanko Packing Co.

1.  Stanko's Businesses

Stanko was the president and sole shareholder of Stanko Packing, an accrual basis meat packing corporation doing business in Gering, Nebraska.  Stanko's cousin, Henry Stanko, had been a coowner of Stanko Packing until Stanko bought his stock sometime after December 1980.

R.G. Stanko Express, a subsidiary of Stanko Packing, was a trucking company.  The School of Gymnastics, Inc., was also a subsidiary of Stanko Packing.  Stanko owned a meat packing plant in Denver, Colorado, called Cattle King Packing Co.  Henry Stanko

worked at Cattle King until Stanko closed it in 1984. Stanko also owned stock in Butch's Cattle Co. and Jackson Feeders.

Sugar Valley Export Co., Inc. (Sugar Valley), was a wholly owned export subsidiary of Stanko Packing incorporated in 1979. Before 1984, Sugar Valley elected to be taxed as a domestic international sales corporation (DISC). Stanko Packing's basis in its Sugar Valley stock was $61,006 on the date when Stanko Packing is deemed to have received a distribution from Sugar Valley of its previously untaxed accumulated income.

2. Stanko's Indictment for Violation of Federal Meat Inspection Act

In April 1984, Stanko was indicted on 15 counts of violating the Federal Meat Inspection Act, ch. 404, 56 Stat. 351 (1942) (current version at 21 U.S.C. sec. 661(c) (1994)).

3. Concepcion Giove Suit Against Stanko, et al.

On May 30, 1984, Concepcion Giove (Giove) filed an action against Stanko and Henry Stanko, Cattle King Packing Co., and others in the U.S. District Court for the District of Colorado. She alleged that the defendants had violated her rights under title VII of the Civil Rights Act of 1964, as amended, Pub. L. 88-352, 78 Stat. 241, 253 (now at 42 U.S.C. sec. 2000e-2 (1988)). Giove v. Cattle King, Inc., Civil No. 84-C-1096.

4. The Sale of Stanko Packing Assets to Packerland and the Packerland Note

On June 14, 1984, Stanko Packing adopted a plan of complete liquidation. On July 16, 1984, Packerland Packing Co., Inc.

(Packerland), of Green Bay, Wisconsin, agreed to buy most of the assets of Stanko Packing for $3,900,000.

Packerland gave Stanko Packing a $3 million promissory note dated July 16, 1984 (the Packerland note). The note required Packerland to pay to Stanko Packing $3 million plus interest at 11-1/2 percent per annum, as follows: $345,000 of interest on July 16, 1985; and thereafter, principal and interest in equal monthly installments of $78,270. The unpaid principal and interest were due on July 16, 1989. The note was secured by a deed of trust and by the land, improvements, and personal property which Packerland bought from Stanko Packing.

Stanko Packing filed a Statement of Intent to Dissolve with the State of Nebraska on July 23, 1984.

5. Stanko's Criminal Convictions

On September 14, 1984, Stanko was convicted on seven of the counts of violating the Federal Meat Inspection Act for which he had been indicted in April. United States v. Cattle King Packing Co., No. 84-CR-094 (D. Colo. 1984). On October 11, 1984, Stanko was sentenced to 6 years in prison and fined $70,000 for these violations. The U.S. Court of Appeals for the Tenth Circuit affirmed Stanko's conviction. United States v. Cattle King Packing Co., 793 F.2d 232 (10th Cir. 1986).

6. Petitioner's Involvement With Stanko Packing

By August 1984, petitioner knew that Stanko Packing had sold most (but not all) of its assets to Packerland. From August 1984

to June 1985, petitioner was more involved in Stanko Packing's daily operations than she had been previously. She controlled Stanko Packing's checkbook and paid Stanko Packing's expenses. She also reviewed its bank statements and sometimes talked to Stanko about whether to pay Stanko Packing's expenses. She had detailed knowledge about the operations of R.G. Stanko Express. During this time, she communicated with accountants at Fred Lockwood & Co. about Stanko Packing. Fred Lockwood was Stanko Packing's accountant until the summer of 1985. Petitioner knew that Stanko Packing's records had been seized, presumably by law enforcement officials, in late 1984 or 1985.

In March 1985, petitioner had Stanko Packing pay her $1,500 for her work on its behalf.

C. Transfers of Stanko Packing Assets to Stanko and Petitioner in 1984

1. Stanko Packing's Transfer of Assets to Stanko in 1984

On September 17, 1984, Stanko Packing transferred the Packerland note, cash, and other property to Stanko, which made Stanko Packing insolvent. Petitioner knew that Stanko Packing transferred the note to Stanko.

2. Stanko's Transfers to Petitioner in 1984

Stanko transferred the following property to petitioner on September 17, 1984: (a) 250 shares of Sugar Valley stock; (b) 4,000 shares of Butch's Cattle Co. stock; (c) 500 shares of Jackson Feeders stock; and (d) 500 shares of stock in the School

of Gymnastics. On that date, he also transferred to petitioner his interest in (a) his and petitioner's home at 333 Skyline Drive, Scottsbluff; (b) lot 2, block 5, Sunrise Hills Addition, Scottsbluff; and (c) lots 1 and 2, block 2, Ditch North Addition, Scottsbluff. Petitioner owned an interest in lot 2, block 5, Sunrise Hills Addition, and in lots 1 and 2, block 2, Ditch North Addition, before September 17, 1984. Stanko's interest in their home at 333 Skyline Drive was worth from $10,000 to $12,500; his interest in lot 2, block 5, Sunrise Hills Addition was worth about $4,000; and his interest in lots 1 and 2, block 2, Ditch North Addition was worth about $15,000 when Stanko transferred them to petitioner.

On September 19, 1984, Stanko transferred the Packerland note to petitioner. The transfer occurred in Nebraska. Petitioner knew about the transfer within several days of September 19, 1984. Petitioner did not pay Stanko Packing or Stanko for the note. Petitioner paid the tax on the income from the Packerland note. Stanko owed no debts to petitioner when he transferred the note to her. Petitioner was married to Stanko at that time.

D. Final Activities of Stanko Packing

1. Income From Sugar Valley Export Co.

Sugar Valley filed its tax returns as a DISC (Forms 1120-DISC) for its taxable years ending September 30, 1983 and 1984. Sugar Valley reported export receipts of $2,730,989 for its

taxable year ending September 30, 1984. Petitioner signed Sugar Valley's return for its taxable year ending September 30, 1984, as its secretary. Carol Lockwood, an accountant with Fred A. Lockwood & Co., prepared the DISC return for Sugar Valley's tax year ending September 30, 1984. Carol Lockwood was one of the accountants who handled the Stanko Packing account.

For its taxable year ending June 21, 1985, Stanko Packing recognized taxable income in the following amounts from Sugar Valley:

| | |
|---|---|
| Gross receipts[1] | $2,457,890 |
| Deemed distribution[2] | 171,645 |
| Accumulated DISC income[3] | 253,322 |

[1]Stanko Packing received 90 percent, or $2,457,890, of Sugar Valley's export receipts for products that it sold to Sugar Valley from Oct. 1, 1983 to Sept. 30, 1984.
[2]Stanko Packing is deemed to have received a distribution of $171,645, taxable as a dividend, from Sugar Valley on Sept. 30, 1984. Sec. 995(b)(1).
[3]Stanko Packing is deemed to have received a distribution of $253,322 of previously untaxed accumulated income from Sugar Valley on Dec. 31, 1984. Sec. 995(b)(2); sec. 1.995-4, Income Tax Regs.

2. Other Income and Deductions for 1985 Tax Year

Stanko Packing received other income of $128,776 in its 1985 taxable year. In 1985, Stanko Packing was entitled to deduct $186,047 for trade or business expenses, $5,342 for property taxes, $1,978 for interest, $51,250 for a worthless debt, and $85 for a charitable contribution.

Stanko Packing overpaid its income tax for the taxable year ending August 25, 1984, by $29,741, which it applied as a credit toward its income tax liability for the following year.

### 3. Dissolution of Stanko Packing

Stanko Packing sold its remaining assets in the fall of 1984. Those assets were not valuable.

On February 8, 1985, Stanko Packing filed Form 1120, U.S. Corporation Income Tax Return, for the 52-53 week-annual period ending August 25, 1984. Stanko Packing did not file an income tax return for its last taxable year, which ended on June 21, 1985. On June 21, 1985, Stanko Packing filed Articles of Dissolution with the State of Nebraska, dissolving Stanko Packing on that date. Stanko Packing's income taxes for its tax year ending June 21, 1985, have not been paid.

### 4. Payments on the Packerland Note

Petitioner rejected an offer (not otherwise identified in the record) to buy the Packerland note for $2.2 million in the first year she held it. She rejected an offer in 1986 from Packerland to discount the note by $500,000 because she thought it was worth more than that.

Packerland paid all principal and interest on the note, totaling $4,101,779.86, by July 31, 1989.

### 5. Stanko Farm and Ranch

In early 1985, petitioner began to operate her own farm business, Stanko Farm and Ranch. She opened a checking account

for it.  In late 1984 and early 1985 petitioner transferred $15,000 from Stanko Packing to the Stanko Farm and Ranch account.

E.  Henry Stanko Suit

In January 1985, Henry Stanko sued Stanko for $100,000 for breach of contract.  He alleged that Stanko had not fully paid the price which he had agreed to pay for Henry's interest in Stanko Packing.  On April 18, 1986, Henry Stanko obtained a $120,613 breach of contract judgment against Stanko.  Henry Stanko then brought an action in which he alleged that Stanko made fraudulent conveyances to petitioner.  A default judgment was entered, and later satisfied for $80,000.

F.  Petitioner's Divorce From Stanko

On July 11, 1985, Stanko filed for a divorce from petitioner in the District Court of Scotts Bluff County.  That court issued a divorce decree on July 3, 1986, which became final on January 3, 1987.

G.  Stanko's Insolvency Claim

On August 18, 1985, Stanko was cited for a traffic violation in Scotts Bluff County.  Nebraska v. Stanko, No. T51581 (Scotts Bluff County Court).  In that case, Stanko filed and signed under penalty of perjury an Affidavit In Support Of Motion To Proceed In Forma Pauperis.  Stanko's affidavit states that he was insolvent when he filed his motion on November 27, 1985, and that he had incurred a large amount of debts in the 18 months before

that date.  The Scotts Bluff County Court denied Stanko's Motion To Proceed In Forma Pauperis.

H.   Transfers to Petitioner in 1985

On September 19, 1985, Stanko transferred his interest in lots 1 and 2, block 5, Ditch North Addition, Scottsbluff, to petitioner.  On October 4, 1985, petitioner, as sole shareholder of Butch's Cattle Co., deeded to herself lots 10, 11, and 12, block 10, L.G. Gill subdivision, Jackson, Wyoming.  The total value of these three lots was about $40,000 on October 4, 1985. On October 7, 1985, petitioner, as sole shareholder of the School of Gymnastics, deeded to herself lots 8, 9, and 10 of block 2, City Addition, Scottsbluff.  The total value of these lots was about $20,000 at that time.

I.   Trusts Created by Stanko and/or Petitioner

On October 30, 1985, petitioner created the Western Enterprises Trust (Western).  Petitioner bought property from the Henry Jerger Estate and transferred it to Western in the fall of 1985.

Petitioner and/or Stanko created the Sheridan Enterprises Trust, Red Barn Trust, and River Enterprises Trust (the trusts) in October and November 1985.  Petitioner was a trustee of each of the trusts.  Petitioner transferred her interest in two or three properties to Stanko by quitclaim deed.  He then transferred that property to the trusts.  When petitioner and Stanko created the trusts, she knew that Stanko Packing had a tax

liability for its last year, that Giove had sued Stanko, and that Henry Stanko had sued Stanko for breach of contract.

J.   Disposition of the Giove Cases

   1.   Default Judgment in Giove v. Cattle King, Inc.

On July 9, 1986, Giove obtained a default judgment against Stanko in Giove v. Cattle King, Inc., Civil No. 84-C-1096, in the amount of $824,650.59.

   2.   Transfers to Petitioner Voided as Fraudulent Conveyances in Giove v. Stanko

Petitioner was a defendant in Giove v. Stanko, No. CV89-L-236 (D. Neb.) (the Giove case).  Respondent was not a party to the Giove case.  In the Giove case, Giove asked that certain conveyances of Stanko's property to the other defendants in the case, including petitioner, be set aside as fraudulent under the Uniform Fraudulent Conveyance Act (Neb. Rev. Stat. secs. 36-602, 36-603, 36-604, 36-607 (1973)).  Giove brought the suit in the U.S. District Court for the District of Nebraska based on diversity of citizenship under 28 U.S.C. section 1332.  That Court filed its Memorandum of Decision on January 11, 1991.  In it, the District Court found that petitioner and Stanko intended to defraud Stanko's creditors, Giove v. Stanko, supra, slip op. at 14, and that Stanko was insolvent and had been since September 17, 1984, id. at 9-10.  The District Court held that Stanko's transfers of property to petitioner on and after May 9, 1985, were fraudulent as to then-existing and future creditors and

voided the transfers. Id. at 17. On May 23, 1991, the Court entered its judgment, voiding the following transfers (among others) as fraudulent conveyances to petitioner: (a) The September 19, 1985, conveyance of Stanko's interest in lots 1 and 2, block 5, Ditch North Addition, Scottsbluff; (b) the October 4, 1985, conveyance by Butch's Cattle Co. of lots 10, 11, and 12, block 10 of the L.G. Gill subdivision in Jackson, Wyoming; and (c) the October 7, 1985, conveyance by the School of Gymnastics, Inc., of lots 8, 9, and 10, block 2, City Addition, Scotts Bluff County.

Petitioner appealed the Giove case. In Giove v. Stanko, 977 F.2d 413 (8th Cir. 1992), the U.S. Court of Appeals for the Eighth Circuit affirmed the judgment of the U.S. District Court for the District of Nebraska. The judgment in Giove v. Stanko, supra, is final.

K. Notice of Transferee Liability

Respondent issued a notice of transferee liability to petitioner on August 7, 1991. Stanko Packing had been dissolved and no longer existed at that time.

L. Stanko's Tax Court Case

Stanko filed a petition in this Court on November 4, 1991. Stanko v. Commissioner, docket No. 25257-91. In the petition, Stanko disputed the Commissioner's determination that he was liable as a transferee of the assets of Stanko Packing for the corporation's income tax liability for the taxable year that

ended on June 21, 1985, and that there were deficiencies in his income tax for 1984 and 1985.

Stanko did not appear when his case was called from the calendar for this Court's Denver, Colorado, trial session on February 8, 1993. The Commissioner moved to dismiss for lack of prosecution. We granted the motion. Stanko v. Commissioner, T.C. Memo. 1993-513. We held that Stanko was liable, as the transferee of assets of Stanko Packing, for a deficiency of $1,324,964 and for additions to tax under sections 6651(a), 6653(a)(1) and (2), and 6655. We also held that Stanko was liable for deficiencies of $961,134 for 1984 and $9,611 for 1985 and for additions to tax under sections 6651(a), 6653(a)(1) and (2), and 6654. On January 10, 1994, we entered a decision in that case. Stanko appealed to the U.S. Court of Appeals for the Ninth Circuit. On November 1, 1994, that court affirmed our decision. Stanko v. Commissioner, 42 F.3d 1402 (9th Cir. 1994). Our decision in that case is final.

On February 18, 1994, the Commissioner assessed income tax liability against Stanko as a transferee of Stanko Packing for its tax year ending June 21, 1985. No payments have been made towards Stanko's transferee liability. Respondent has found no assets of Stanko and has received no response from Stanko about his transferee liability.

OPINION

A.   Transferee Liability

Respondent contends that petitioner is liable as a successor transferee (i.e., a transferee of a transferee) for the 1985 income tax and additions to tax owed by Stanko Packing. Petitioner disagrees.

The Commissioner may collect unpaid income taxes of a transferor of assets from a transferee or a successor transferee of those assets.  Sec. 6901(a), (c)(2); Commissioner v. Stern, 357 U.S. 39, 42 (1958); Stansbury v. Commissioner, 104 T.C. 486, 489 (1995).  State law generally determines the extent of the transferee's liability.  Commissioner v. Stern, supra at 45; Gumm v. Commissioner, 93 T.C. 475, 479 (1989), affd. without published opinion 933 F.2d 1014 (9th Cir. 1991).  Therefore, we apply Nebraska law in deciding whether petitioner is liable as a transferee under section 6901.

The Commissioner bears the burden of proving that the taxpayer is liable as a transferee under State law or in equity. Sec. 6902(a); Rule 142(d); Gumm v. Commissioner, supra at 479-480.  Petitioner bears the burden of proving that the transferor is not liable for the tax and additions to tax.  Sec. 6902(a).

B.   Res Judicata

We first decide whether petitioner is precluded by res judicata from contesting that Stanko Packing's income tax

deficiency and additions to tax are other than as decided in Stanko v. Commissioner, T.C. Memo. 1993-513; and that Stanko is liable as a transferee of Stanko Packing for its income tax deficiency and additions to tax for its tax year ending June 21, 1985.

The doctrine of res judicata prevents parties from relitigating the same claims or issues. Baptiste v. Commissioner, 29 F.3d 433, 435-437 (8th Cir. 1994), revg. 100 T.C. 252 (1993), affg. in part and revg. in part T.C. Memo. 1992-199; Hemmings v. Commissioner, 104 T.C. 221, 230 (1995). Res judicata applies to tax cases. United States v. International Bldg. Co., 345 U.S. 502, 506 (1953); Commissioner v. Sunnen, 333 U.S. 591, 598 (1948). Res judicata applies if: (1) The issue contested in both proceedings is identical; (2) the parties to the later proceeding are the same as, or are in privity with, the parties to the earlier proceeding; and (3) the earlier proceeding resulted in a final judgment on the merits. Nevada v. United States, 463 U.S. 110, 129-130 (1983); Baptiste v. Commissioner, supra.

1. The Issues Contested in Stanko v. Commissioner and in This Case Are Identical

For res judicata to apply, an issue contested in Stanko v. Commissioner, supra, and the instant case must be identical. The issue in the earlier Tax Court case was whether Stanko was liable as a transferee of assets of Stanko Packing for the 1985 income

tax and additions to tax of Stanko Packing; and, if so, the amount of that liability. Petitioner does not dispute that Stanko was a transferee of Stanko Packing.

Respondent contends that res judicata establishes that Stanko was a transferee of Stanko Packing and the amount of Stanko Packing's liability for income tax, additions to tax, and interest. Issues contested and decided in Stanko v. Commissioner, supra, are identical to issues in this case. This meets the first requirement for res judicata to apply.

2. The Parties in the Instant Case Are the Same as, or in Privity With, the Parties in Stanko v. Commissioner

For res judicata to apply, the parties to the later proceeding must be the same as, or in privity with, the parties to the earlier proceeding. Commissioner v. Sunnen, supra at 597. Respondent was a party in Stanko v. Commissioner, supra, and in the instant case. Petitioner does not dispute that she is in privity with Stanko. This meets the second requirement for res judicata to apply.

3. The Decision in Stanko v. Commissioner, T.C. Memo. 1993-513, Was a Final Judgment on the Merits

For res judicata to apply, the earlier proceeding in Stanko v. Commissioner, supra, must have resulted in a final judgment on the merits. This Court entered a default judgment against Stanko in that case. Petitioner does not dispute that Stanko's Tax Court case is final. However, petitioner argues that res

judicata does not apply since Stanko v. Commissioner, supra, was decided by default. We disagree.

A default judgment is a judgment on the merits for purposes of res judicata. Morris v. Jones, 329 U.S. 545, 550-551 (1947) ("A judgment of a court having jurisdiction of the parties and of the subject matter operates as res judicata, in the absence of fraud or collusion, even if obtained upon a default"); Kapp v. Naturelle, Inc., 611 F.2d 703, 707 (8th Cir. 1979); Moyer v. Mathas, 458 F.2d 431, 434 (5th Cir. 1972); Shaheen v. Commissioner, 62 T.C. 359, 364 (1974). Res judicata applies to Tax Court cases resolved through default judgments. Shaheen v. Commissioner, supra.

This meets the third requirement for res judicata to apply. Thus, we hold that res judicata bars petitioner from disputing that Stanko is liable as a transferee of assets of Stanko Packing for its income tax deficiency and additions to tax as decided in Stanko v. Commissioner, supra.

The parties have stipulated adjustments to Stanko Packing's income and deductions for its tax year that ended on June 21, 1985. We believe that, for purposes of determining petitioner's liability as a transferee in this case, Stanko Packing's

iability for tax and additions to tax should be computed based on that stipulation.[1]

C.  Whether Petitioner Is Liable as a Successor Transferee of Stanko Packing

1.  Fraudulent Conveyances Under Nebraska Law

Respondent claims that the transfer of the Packerland note to petitioner is void as to respondent, an existing creditor, under sections 36-604 and 36-607 of the Revised Statutes of Nebraska  (Neb. Rev. Stat. secs. 36-604, 36-607 (reissue 1988)) (as in effect at the time of the transfer).  Respondent argues that petitioner is a successor transferee because she received property from Rudy Stanko without consideration, who received property from Stanko Packing without consideration, and Stanko Packing was left without assets to pay its 1985 income tax liability.  Sec. 6901(h).[2]

---

[1] At the end of the trial, petitioner requested an opportunity to submit additional evidence at a later date.  The Court granted petitioner's request.  The parties later agreed that no further trial was necessary.

[2] Sec. 6901(h) provides:

SEC. 6901(h).  Definition of Transferee.--As used in this section, the term "transferee" includes donee, heir, legatee, devisee, and distributee, and with respect to estate taxes, also includes any person who, under section 6324(a)(2), is personally liable for any part of such tax.

Petitioner disputes that Stanko transferred the note to her for less than fair consideration or with the intent to hinder, delay, or defraud creditors.

The Nebraska Uniform Fraudulent Conveyance Act (as in effect during all times relevant here)[3] (Neb. Rev. Stat. secs. 36-602, 36-603, 36-604, 36-607 (reissue 1988))[4] allows a court to void a

---

[3] This statute has since been replaced. The statute governing substantive matters in effect at the time of the transfer governs, not statutes enacted later. Schall v. Anderson's Implement, Inc., 484 N.W.2d 86, 89-90 (Neb. 1992).

[4] Secs. 36-602, 36-603, 36-604, and 36-607 of the Revised Statutes of Nebraska (Neb. Rev. Stat. secs. 36-602, 36-603, 36-604, and 36-607 (reissue 1988)) (as in effect at the time of the transfer) provide:

Sec. 36-602   Insolvency; how determined.

(1) A person is insolvent when the present fair salable value of his or her assets is less than the amount that will be required to pay his or her probable liability on his or her existing debts as they become absolute and matured.

Sec. 36-603   Fair consideration; when given.

Fair consideration is given for property, or obligation,

(a)  When in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied, or

(b)  When such property, or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property, or obligation obtained.

Sec. 36-604   Conveyance by insolvent; fraudulent.

(continued...)

debtor's transfer of property if the transfer was made without fair consideration and left the debtor insolvent (i.e., without enough property to pay his or her debts), or it was actually intended (as distinguished from intent presumed in law) to hinder, delay, or defraud any creditor. We need not decide whether Stanko's transfer of the Packerland note to petitioner left Stanko insolvent because respondent has proven that Stanko actually intended to hinder, delay, or defraud creditors, and thus made a fraudulent conveyance under section 36-607 of the Revised Statutes of Nebraska.

2. <u>Was the Transfer Made for Fair Consideration</u>?

For purposes of section 36-607 of the Revised Statutes of Nebraska, transfers between spouses are presumed to be fraudulent as to existing creditors. <u>Brown v. Borland</u>, 432 N.W.2d 13, 16-17 (Neb. 1988) (decided under Neb. Rev. Stat. sec. 36-607 (reissue

---

[4](...continued)
    Every conveyance made and every obligation incurred by a person who is or who will be thereby rendered insolvent is fraudulent as to creditors without regard to his or her actual intent if the conveyance is made or the obligation is incurred without a fair consideration.


Sec. 36-607 <u>Conveyances made with intent to defraud</u>.

    Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors.

1984)); <u>Gifford-Hill & Co. v. Stoller</u>, 380 N.W.2d 625, 630 (Neb. 1986) (decided under Neb. Rev. Stat. sec. 36-401 (reissue 1978) (since repealed and replaced by the Uniform Fraudulent Conveyances Act, Neb. Rev. Stat. secs. 36-602, 36-603, 36-604, 36-607 (reissue 1988))).[5]  The party defending the transfer bears the burden of proving that an interspousal transfer was made for fair consideration.  <u>Brown v. Borland</u>, <u>supra</u> at 16.  To rebut this presumption, petitioner must show that she paid fair consideration for the Packerland note or that Stanko's intent in making the transfer was not fraudulent.  See <u>United States v. Thomassen</u>, 610 F. Supp. 386, 392-393 (D. Neb. 1985) (decided under Neb. Rev. Stat. sec. 36-401 (reissue 1978)); <u>Gifford-Hill & Co. v. Stoller</u>, <u>supra</u>.  As discussed next and at par. C-3, petitioner has shown neither.

Petitioner argues that she gave consideration for the note because:  (a) She was entitled to a one-half marital interest in Stanko Packing's assets; (b) she accepted the note in satisfaction of her right to a division of the other marital

---

[5]Under Nebraska's predecessor fraudulent conveyances statute (Neb. Rev. Stat. sec. 36-401), a conveyance made with intent to defraud creditors was void.  Badges of fraud and presumptions were developed through case law.  Sec. 36-607 of the Revised Statutes of Nebraska (Neb. Rev. Stat. sec. 36-607 (reissue 1988)) preserved the distinction between "intent presumed at law" and "intent to defraud".  Thus, the rules on badges of fraud and their presumptions are still in effect under the uniform act. <u>Brown v. Borland</u>, 432 N.W.2d 13, 16 (Neb. 1988).

assets, alimony, and child support; and (c) she agreed to assume Stanko's tax liability on the income from the note.

We disagree. First, petitioner did not own any Stanko Packing stock and has not proven that she was entitled to a one-half marital interest in its assets. Petitioner's reliance on Thiltges v. Thiltges, 527 N.W.2d 853 (Neb. 1995), for the proposition that she was entitled to a one-half marital interest in the Stanko Packing assets upon dissolution of her marriage is misplaced. In Thiltges, the Supreme Court of Nebraska stated that the division of property is not subject to a precise mathematical formula, that the general rule is to award a spouse one-third to one-half of the marital estate, and that the ultimate test in making a division of marital property is fairness and reasonableness as established by the facts of each case. Id. at 857-858. Thus, petitioner has not shown that she was entitled to a one-half marital interest in the Stanko Packing assets. Second, petitioner testified that Stanko transferred the note to her because he thought it was fair to give her something because she was his wife and she had supported him during his criminal trial. We think a more likely explanation for the transfer 3 days after his criminal conviction is that Stanko wanted to keep the property in petitioner's hands and away from his creditors. Third, petitioner's payment of tax liabilities arising from the income from the note is not consideration for

the note; any tax liability on the income from the note was petitioner's since she received the income from the note.

Finally, petitioner testified that she did not ask for alimony or temporary support because she had the Packerland note, and claims that she waived future alimony, maintenance, or child support when she received the note from Stanko.  Even if she did, a waiver would not have been consideration for the Packerland note.  See Brown v. Borland, supra at 17.  Petitioner and Stanko's divorce proceeding had not yet begun when Stanko transferred the note to petitioner.  Stanko filed for divorce in July 1985, nearly a year after he transferred the note to her.  Petitioner has not shown that she would have been awarded alimony or maintenance in her divorce from Stanko.  Repayment of an antecedent debt (that is, a debt existing at the time of the transfer) can be fair consideration for transferred property for purposes of sections 36-603 and 36-607 of the Revised Statutes of Nebraska.  See Schall v. Anderson's Implement, Inc., 484 N.W.2d 86, 90 (Neb. 1992).  However, liability for alimony or child support that may arise in the future is not an antecedent debt for purposes of sections 36-603 and 36-607 of the Revised Statutes of Nebraska (Neb. Rev. Stat. secs. 36-603, 36-607 (reissue 1988)).  See Brown v. Borland, supra at 17.  We hold that petitioner did not give fair consideration for the note.

3.    <u>Was the Transfer Made with Actual Intent to Hinder, Delay, or Defraud Creditors</u>

Under Nebraska law, a transfer is fraudulent if the transferor had actual intent, as distinguished from intent presumed in law, to defraud creditors. Neb. Rev. Stat. sec. 36-607 (reissue 1988). Thus, respondent must prove: (a) That the transferee received property of the transferor; and (b) that the transferor made the transfer with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud present or future creditors. Neb. Rev. Stat. sec. 36-607.

Petitioner contends that Stanko did not transfer the Packerland note to her with the intent to defraud his creditors. We disagree.

Nebraska law generally recognizes the following badges of fraud for purposes of establishing a fraudulent conveyance: The transfer was for less than fair consideration, the transfer was of the transferor's entire estate, the transfer was made to the transferor's spouse or other family member, the transfer was made while there was pending or threatened litigation against the transferor, the transfer was made secretly or hurriedly, the transfer was made while the transferor was insolvent or greatly in debt, the transfer was a departure from the transferor's usual method of doing business, and the transferor retained possession of and/or benefits in the transferred property. <u>Gifford-Hill & Co. v. Stoller</u>, 380 N.W.2d 625, 630 (Neb. 1986); <u>First Natl. Bank</u>

v. First Cadco Corp., 203 N.W.2d 770, 778-779 (Neb. 1973)

(decided under Neb. Rev. Stat. sec. 36-401 (reissue 1943));

Farmers State Bank v. Dierks, 289 N.W. 860, 866 (Neb. 1940)

(decided under Neb. Rev. Stat. sec. 36-401 (reissue 1929)).

Many of those badges of fraud are present here.  Stanko had a significant amount of tax liabilities and pending claims against him when he transferred the note to petitioner.[6]  Three days after Stanko's criminal conviction, Stanko Packing distributed substantially all of its remaining assets to Stanko, leaving it insolvent.  Two days later, Stanko transferred the Packerland note to petitioner for no consideration.  The transfer was between husband and wife, and was made without consideration and as part of a series of transfers that greatly reduced Stanko's estate.  The transfer was made just before the District Court for Colorado imposed criminal penalties and while the Giove lawsuit was pending against Stanko.

Stanko filed an affidavit in November 1985 stating that he was insolvent.  We agree with petitioner that Stanko's affidavit does not necessarily show that he was insolvent; however, it does

---

[6] Stanko had the following claims pending against him when he transferred the note to petitioner:  Fines relating to his criminal conviction by the District Court for Colorado (later adjudged to be $70,000); claims made in the Giove lawsuit (later adjudged to be $824,650); Stanko Packing's 1984 tax liability (later adjudged to be $1,324,964); and Stanko's 1984 and 1985 tax liability (later adjudged to be $961,134).

show that he may have been hiding assets in an attempt to hinder or delay his creditors.

The District Court for Nebraska found that later transfers from Stanko to petitioner were fraudulent. Giove v. Stanko, No. CV89-L-236 (D. Neb., Jan. 11, 1991), affd. 977 F.2d 413 (8th Cir. 1992). This indicates that Stanko's transfer of the Packerland note to petitioner was part of a pattern of transferring assets and depleting his estate in an attempt to hinder, delay, or defraud his creditors. Evidence of prior or subsequent acts is relevant to prove intent or state of mind where they appear to be part of a pattern. United States v. King, 768 F.2d 586, 587-588 (4th Cir. 1985); United States v. Hadaway, 681 F.2d 214, 217 (4th Cir. 1982).

We conclude that Stanko transferred the Packerland note to petitioner with the actual intent to delay, defraud, or hinder his creditors. Accordingly, we hold that Stanko's transfer of the Packerland note to petitioner was a fraudulent conveyance under section 36-607 of the Revised Statutes of Nebraska (Neb. Rev. Stat. sec. 36-607 (reissue 1988)).[7]

_____

[7]Respondent also contends that petitioner is collaterally estopped by Giove v. Stanko, No. CV89-L-236 (D. Neb., Jan. 11, 1991), affd. 977 F.2d 413 (8th Cir. 1992), from denying that Stanko's transfer of the Packerland note to petitioner was fraudulent as to his then-existing and future creditors. Based on our holding that Stanko's transfer of the note to petitioner was a fraudulent conveyance under Nebraska law, we need not reach this issue.

D.    The Value of the Packerland Note

Respondent must prove the value of the assets transferred.[8] Tilton v. Commissioner, 88 T.C. 590, 600 (1987); Ashton v. Commissioner, 28 B.T.A. 582, 584-585 (1933).  The face value of the Packerland note was $3 million.  Respondent's expert, Kerry Packard, estimated that the fair market value of the Packerland note, using the willing buyer/willing seller test, was $2,806,979 on September 19, 1984, the date Stanko transferred it to petitioner.[9]  In making this estimate, he considered the risk of nonpayment, the fact that the note was secured by real estate and equipment Packerland bought from Stanko Packing, and the fact that Packerland could easily pay its short-term obligations and had good creditworthiness on September 19, 1984.

Petitioner offered no expert testimony concerning the value of the Packerland note.

Petitioner points out that, on September 15, 1985 (the due date for Stanko Packing's return for its tax year ending on June 21, 1985), she had received only $501,240 ($345,000 on July 15,

_____

[8] The parties dispute whether, and to what extent, petitioner is liable for interest if Stanko Packing's tax, additions to tax, and interest exceed the value of the Packerland note.  We need not decide this issue unless the Rule 155 computations show that the deficiency, additions to tax, and interest exceed the value of the Packerland note.

[9] Although the District Court found that Stanko transferred the Packerland note to petitioner on Sept. 17, 1984, the record shows that Stanko actually transferred the note to petitioner on Sept. 19, 1984.  The difference is in any event immaterial.

1985, and two payments of $78,270 in August and September 1985). She contends that the value of the note did not exceed that amount. Petitioner argues that a promissory note represents only the right to receive future payments and thus the note itself has no value. She contends that the value of the note equaled the amount of payments she had received.

We disagree. Packard reasonably concluded that the value of the note exceeded the amount of payments petitioner had received in 1985. Packard conservatively evaluated Packerland's debt rating, which he used to discount the payments on the note to present value. He viewed the risk of nonpayment on the note as slight because the note was secured by real property and equipment worth more than $3 million. Thus, we accept his conclusion that the note was worth $2,806,979 on September 19, 1984.

Subsequent events corroborate Packard's estimate. Petitioner received full payment on the note ($4,101,779.86) in 1989. Packerland offered to discount the note by $500,000 in 1986, but petitioner declined. Subsequent events may be used to corroborate an appraisal that is based on facts known on the valuation date. See Estate of Kaplin v. Commissioner, 748 F.2d 1109, 1111 (6th Cir. 1984), revg. T.C. Memo. 1982-440.

To reflect the foregoing,

_Decision will be entered under Rule 155._